STATE OF NORTH CAROLINA v. ALEEN ESTES WALDEN

No. 162A81

(Filed 3 August 1982)

1. Criminal Law § 9.1; Parent and Child § 2.1— assault on child—presence of parent—aiding and abetting—failure to attempt to prevent assault

   The failure of a parent who is present to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed. Therefore, a mother could be found guilty of assaulting her child on a theory of aiding and abetting solely on the basis that she was present when her child was assaulted but failed to take reasonable steps to prevent the assault.

State v. Walden

**2. Criminal Law § 26.5; Parent and Child § 2.2— child abuse—assault—conviction of both—no double jeopardy**

Even if the acts of defendant violated both the child abuse statute, G.S. 14-318.2, and the assault with a deadly weapon inflicting serious injury statute, G.S. 14-32(b), neither statute proscribes a crime which is a lesser included offense of the other, and a conviction or acquittal of one will not support a plea of former jeopardy against a charge for a violation of the other.

**3. Criminal Law § 53— expert medical testimony—opinion based on observed facts**

A medical expert was properly permitted to give his opinion concerning injuries to a child based on facts which he himself had observed during his examination of the child.

**4. Criminal Law § 34.5— evidence of other offenses—admissibility to show identity and make out res gestae**

In a prosecution of defendant as an aider and abettor for assault with a deadly weapon inflicting serious injury upon her child, evidence that the actual assailant had committed other attacks against defendant's children in the presence of defendant was competent to show a chain of circumstances in respect to the matter on trial which were so connected with the offense charged as to throw light upon the identity of the child's attacker and to make out the *res gestae*.

**5. Criminal Law § 91— dismissal of charge—new indictment—speedy trial**

Where defendant was charged by warrant dated 12 December 1979 with child abuse on 8 December, that charge was dismissed on 3 April 1980, a second warrant was issued on 3 April charging defendant with felonious assault on her child on 9 December 1979, defendant was indicted for the assault on her child on 28 April, defendant was brought to trial on the assault charge on 25 August, and the evidence showed that there were two separate assaults, one on 8 December and one on 9 December, the child abuse and the assault were not a "series of acts" or a "single scheme or plan" within the meaning of G.S. 15A-701(a)(1) so as to require the assault trial to take place within 120 days of the original child abuse charge, and the assault trial properly began within 120 days of the indictment on that charge.

Justice MARTIN took no part in the consideration or decision of this case.

ON discretionary review of the decision of the North Carolina Court of Appeals reported at 53 N.C. App. 196, 280 S.E. 2d 505 (1981).

The defendant was charged in a bill of indictment, proper in form, with the felony of assault with a deadly weapon inflicting serious bodily injury in violation of G.S. 14-32. She was tried at the 25 August 1980 Session of Superior Court, Wake County, upon her plea of not guilty and found guilty as charged by a jury.

She appealed to the Court of Appeals from judgment imposed by Judge Robert L. Farmer on 27 August 1980 sentencing her to imprisonment for a term of not less than five years nor more than ten years. The Court of Appeals ordered that the defendant be given a new trial for errors committed. Pursuant to G.S. 7A-31, the State petitioned this Court seeking discretionary review of the opinion of the Court of Appeals. On 1 December 1981 we allowed the State's Petition for Discretionary Review.

*Rufus L. Edmisten, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State-appellant.*

*Brenton D. Adams for the defendant-appellee.*

MITCHELL, Justice.

[1]   The principal question presented is whether a mother may be found guilty of assault on a theory of aiding and abetting solely on the basis that she was present when her child was assaulted but failed to take reasonable steps to prevent the assault. We answer this question in the affirmative and reverse the opinion of the Court of Appeals which held to the contrary and ordered a new trial.

On 28 April 1980, defendant was indicted under G.S. 14-32 as follows:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 9th day of December, 1979, in Wake County Aleen Estes Walden unlawfully and wilfully and feloniously assault Lamont Walden, age one year, with a certain deadly weapon, to wit: a leather belt with a metal buckle, inflicting serious bodiyly [sic] injuries, not resulting in death, upon the said Lamont Walden, to wit: numerous cuts and bruises causing severe blood loss and requiring hospitalization.

Lamont Walden is defendant's son. Defendant was convicted by a jury and sentenced to 5-10 years imprisonment.

The State offered evidence at trial tending to show that Mr. Jasper Billy Davis heard a child crying in the apartment next to his on Saturday evening, 8 December 1979. On Sunday morning, 9 December 1979, at approximately 10:00 a.m., Davis heard a small

child screaming and hollering and heard a popping sound coming from the same apartment next door. The sound of the child screaming and hollering and the popping sound lasted for approximately one to one and one-half hours. Davis made a complaint to the Raleigh Police Department requesting that they investigate the noise that he was hearing.

Officer D. A. Weingarten of the Raleigh Police Department testified that he went to Davis' apartment on 9 December 1979. After speaking with Davis, the officer knocked on the door of the apartment next to the Davis apartment. A Miss Devine opened the door and allowed the officer to enter the apartment, where he stayed for a few minutes before leaving to obtain a search warrant. Officer Weingarten returned a short time later with a warrant to search the apartment in question. Upon entering the apartment, the officer saw Devine, the defendant Aleen Estes Walden and George Hoskins. The officer also saw five small children in a corner of the apartment and noticed cuts and bruises on the bodies of the children. One of the children the officer observed at this time was Lamont Walden, a small child in diapers. The officer observed red marks on the chest of Lamont Walden as well as a swollen lip, bruises on his legs and back and other bruises, scarring and cuts.

At trial three of these small children, Roderick Walden, ten years old, Stephen Walden, eight years old, and Derrick Walden, seven years old, testified that "Bishop" George Hoskins hit their brother Lamont Walden with a belt repeatedly over an extended period of time on Sunday, 9 December 1979. Each child testified that the defendant, their mother, was in the room with Hoskins and the baby (Lamont) at the time this beating occurred. Lamont Walden was crying and bleeding as a result of the beating Hoskins gave him. The children testified further that the defendant looked on the entire time the beating took place but did not say anything or do anything to stop the "Bishop" from beating Lamont or to otherwise deter such conduct.

Mrs. Annette McCullers, who is employed by Social Services of Wake County, testified that she observed the five children including Lamont on 9 December 1979. Lamont had bruises on his chest, red marks on his cheek, marks on his back and blood on his back. McCullers talked with Lamont's brothers at this time, and

each of them told her that Lamont had been beaten by "Bishop" George Hoskins.

Dr. David L. Ingram, a specialist in pediatric medicine at Wake Memorial Hospital and a child medical examiner, testified that, on 10 December 1979, he examined Lamont at Wake Memorial Hospital and observed bruises, skin breaks and purple marks on Lamont's body. There was blood in Lamont's urine which resulted in the loss of a substantial quantity of blood and required that Lamont be given a blood transfusion. Dr. Ingram testified that in his expert opinion the marks on Lamont were caused by hard blows to the body occurring less than a week prior to his examination.

The defendant offered evidence in the form of testimony of her father, Mr. Meredith Estes, tending to show that James Walden, the father of the Walden children, had whipped the children in the past when living with them. Estes testified that the defendant had never mistreated the children. He further testified that the children had told him that it was their father who beat them on the occasion in question, but that they had later changed their story and stated that George Hoskins beat them and also beat Lamont.

The defendant testified that she was living in an apartment with Miss Devine on 8 December 1979. Three of the defendant's sons had gone to the store with Devine and Hoskins. The defendant's two youngest children were with her. There was a knock on the door and the children's father entered. The father immediately began hitting Lamont Walden with a belt. The defendant tried to stop him but could not do so. The defendant testified that she was struck by the children's father on this occasion and received injuries to her face.

Based on the preceding evidence, the defendant was convicted of assault with a deadly weapon inflicting serious injury in violation of G.S. 14-32(b). During the trial, the State proceeded on the theory that the defendant aided and abetted George Hoskins in the commission of the assault on her child and was, therefore, guilty as a principal to the offense charged.

The defendant assigned as error the action of the trial court in denying her motion to dismiss and allowing the case against

her for the felonious assault charge to go to the jury, when all of the evidence tended to show that the defendant did not perform any affirmative act of commission to encourage the perpetrator and did not herself administer the beating to her child. In support of this assignment, the defendant contends, among other things, that the trial court erred in instructing the jury as follows:

> It is the duty of a parent to protect their children and to do whatever may be reasonably necessary for their care and their safety. A parent has a duty to protect their children and cannot stand passively by and refuse to do so when it is reasonably within their power to protect their children. A parent is bound to provide such reasonable care as necessary, under the circumstances facing them at that particular time. However, a parent is not required to do the impossible or the unreasonable in caring for their children.

> Now a person is not guilty of a crime merely because she is present at the scene. To be guilty she must aid or actively encourage the person committing the crime, or in some way communicate to this person her intention to assist in its commission; *or that she is present with the reasonable opportunity and duty to prevent the crime and fails to take reasonable steps to do so.*

> So I charge that if you find from the evidence beyond a reasonable doubt, that on or about December 9th, 1979, Bishop Hoskins committed assault with a deadly weapon inflicting serious injury on Lamont Walden, that is that Bishop Hoskins intentionally hit Lamont Walden with a belt and that the belt was a deadly weapon, thereby inflicting serious injury upon Lamont Walden; and that the defendant was present at the time the crime was committed and did nothing and that in so doing the defendant knowingly advised, instigated, encouraged or aided Bishop Hoskins to commit that crime; *or that she was present with the reasonable opportunity and duty to prevent the crime and failed to take reasonable steps to do so*; it would be your duty to return a verdict of guilty of assault with a deadly weapon, inflicting serious injury. (Emphases added.)

The defendant contends that the quoted instructions of the trial court are erroneous in that they permitted the jury to con-

vict her for failing to interfere with or attempt to prevent the commission of a felony. She argues that the law of this State does not allow a conviction in any case for aiding and abetting the commission of a crime absent some affirmative act of commission by the defendant assisting or encouraging the commission of the crime or indicating the defendant's approval and willingness to assist. We do not agree.

It is true, of course, that this Court speaking through Chief Justice Ruffin has stated:

> For one who is present and sees that a felony is about being committed and does in no manner interfere, does not thereby participate in the felony committed. Every person may, upon such an occasion, interfere to prevent, if he can, the perpetration of so high a crime; but he is not bound to do so at the peril, otherwise, of partaking of the guilt. It is necessary, in order to have that effect, that he should do or say something showing his consent to the felonious purpose and contributing to its execution, as an aider and abettor.

*State v. Hildreth,* 31 N.C. (9 Iredell) 440, 444 (1849). In a later case, Justice Ervin speaking for this Court said:

> The mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree; and this is so even though he makes no effort to prevent the crime, or even though he may silently approve of the crime, or even though he may secretly intend to ·assist the perpetrator in the commission of the crime in case his aid becomes necessary to its consummation.

*State v. Birchfield,* 235 N.C. 410, 413, 70 S.E. 2d 5, 7 (1952), *quoted with approval in State v. Bruton,* 264 N.C. 488, 498, 142 S.E. 2d 169, 176 (1965). However, this general rule allows some exceptions. Where the common law has imposed affirmative duties upon persons standing in certain personal relationships to others, such as the duty of parents to care for their small children, one may be guilty of criminal conduct by failure to act or, stated otherwise, by an act of omission. *See generally* W. LaFave and A. Scott, Handbook on Criminal Law, § 26 at 184 (1972). Individuals also have been found criminally liable for failing to perform affirmative duties required by statute. *Id.*

Parents in this State have an affirmative legal duty to protect and provide for their minor children. G.S. 14-316.1; *In Re TenHoopen*, 202 N.C. 223, 162 S.E. 619 (1932); *State v. Mason*, 18 N.C. App. 433, 197 S.E. 2d 79, *cert. denied*, 283 N.C. 669, 197 S.E. 2d 878 (1973). Although our research has revealed no controlling case in this jurisdiction on the question of a parent's criminal liability for failure to act to save his or her child from harm, the trend of Anglo-American law has been toward enlarging the scope of criminal liability for failure to act in those situations in which the common law or statutes impose a responsibility for the safety and well-being of others. *See generally* W. LaFave and A. Scott, Handbook on Criminal Law, § 26, 182-91 (1972). *See, e.g.*, Annot. 1 A.L.R. 4th 38 (1980); Annot. 100 A.L.R. 2d 483 (1965). Thus, it has generally been thought that it is the duty of a parent who has knowledge that his or her child of tender years is in danger to act affirmatively to aid the child if reasonably possible to do so. Perkins on Criminal Law, Chapter 6, § 4, 597 (2d Ed. 1969).

We find no case from any jurisdiction directly in point on the precise question before us, i.e., whether a mother may be found guilty of assault on a theory of aiding and abetting solely on the ground that she was present when her child was attacked and had a reasonable opportunity to prevent or attempt to prevent the attack but failed to do so. The State has cited numerous cases from various states for the proposition that a mother can be held criminally responsible in such situations. Many of the cases relied upon by the State do, by way of strong *obiter dicta*, indicate criminal liability of a parent in such circumstances. But these statements have been made in cases in which the record would have supported a finding that the parent in one way or another conveyed approval of the criminal act beyond the approval inherent in merely failing to attempt to stop the commission of the crime. *E.g., Commonwealth v. Howard*, 402 A. 2d 674 (Pa., 1979); *State v. Smolin*, 557 P. 2d 1241 (Kan., 1976); *State v. Austin*, 172 N.W. 2d 284 (S.D., 1969); *State v. Zobel*, 134 N.W. 2d 101 (S.D.) *cert. denied*, 382 U.S. 833, 15 L.Ed. 2d 76, 86 S.Ct. 74 (1965); *People v. Ray*, 399 N.E. 2d 977 (Ill. App., 1979). The same is generally true with regard to cases decided by the courts of other common-law countries. *But cf. Rex v. Russell*, [1933] Vict. L R 59 (Aus., 1932) (*seriatim* opinion). Our own prior cases involving the criminal liability of parents who were present when their children

were harmed by others are likewise of little value as precedent in deciding the case before us, as they also tend to involve fact situations from which the jury could have convicted because it found that the parent charged committed affirmative acts of commission encouraging the perpetrator. *E.g., State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956).

By contrast, the trial court's charge to the jury in the present case puts the issue squarely and unavoidably before us for decision. The trial court instructed the jury that parents have a duty to protect their children and cannot stand passively by and refuse to do so when it is reasonably within their power to provide the children protection. The trial court was, of course, correct in perceiving that whether a general legal duty of parents exists in such cases is a question of law to be determined by the trial court and stated to the jury, rather than a question of fact for the jury. *See* Frankel, Criminal Omissions: A Legal Microcosm, 11 Wayne L. Rev. 367, 369-70 (1965). The trial court's holding and instructions to the jury on such legal duties are, however, fully reviewable on appeal.

Having stated what it perceived to be the legal duty of a parent, the trial court then informed the jury specifically that they should convict the defendant if she failed to perform that duty. The trial court specifically allowed the jury to convict the defendant on a theory of aiding and abetting if they found that she was present and failed to intervene to protect her child. In this regard, the trial court stated that, if the jury found the defendant "was present with the reasonable opportunity and duty to prevent the crime and failed to take reasonable steps to do so; it would be your duty to return a verdict of guilty of assault with a deadly weapon, inflicting serious injury." Therefore, for purposes of this appeal, we must assume that the jury convicted based solely upon the ground set forth in this portion of the instructions and did not rely upon any evidence tending to show an affirmative act of commission by the defendant indicating her approval or encouragement of the assault on her child. Having made this assumption, we find no error in the trial court's instructions to the jury or in the verdict or judgment.

The traditional approach of most American jurisdictions, drawn largely from the English tradition, tends to confine the

duty to act to save others from harm to certain very restrictive categories of cases. This approach has frequently been the subject of criticism. *E.g.*, Seney, "When Empty Terrors Overawe" — Our Criminal Law Defenses, 19 Wayne L. Rev. 947, 952-58 (1973); Hughes, Criminal Omissions, 67 Yale L.J. 590 (1958). Critics have often pointed out the fact that most countries adopt a much more inclusive view in determining what classes of persons shall have a duty to rescue another when they can do so without danger to themselves. *See* Frankel, Criminal Omissions: A Legal Microcosm, 11 Wayne L. Rev. 367 (1965); Dawson, Negotiorum Gestio: The Altruistic Intermeddler, 74 Harv. L. Rev. 1073, 1101-06 (1961). The commentators tend to take the view that the duty to rescue another from peril and criminal liability for failure to do so should be based upon "the defendant's clear recognition of the victim's peril plus his failure to take steps which might reasonably be taken without risk to himself to warn or protect the victim." Hughes, Criminal Omissions, 67 Yale L.J. 590, 626 (1958).

Although we are not now prepared to adopt any such general rule of criminal liability, we believe that to require a parent as a matter of law to take affirmative action to prevent harm to his or her child or be held criminally liable imposes a reasonable duty upon the parent. Further, we believe this duty is and has always been inherent in the duty of parents to provide for the safety and welfare of their children, which duty has long been recognized by the common law and by statute. *E.g.*, G.S. 14-316.1; *In Re TenHoopen*, 202 N.C. 223, 162 S.E. 619 (1932). This is not to say that parents have the legal duty to place themselves in danger of death or great bodily harm in coming to the aid of their children. To require such, would require every parent to exhibit courage and heroism which, although commendable in the extreme, cannot realistically be expected or required of all people. But parents do have the duty to take every step reasonably possible under the circumstances of a given situation to prevent harm to their children.

In some cases, depending upon the size and vitality of the parties involved, it might be reasonable to expect a parent to physically intervene and restrain the person attempting to injure the child. In other circumstances, it will be reasonable for a parent to go for help or to merely verbally protest an attack upon

the child. What is reasonable in any given case will be a question for the jury after proper instructions from the trial court.

We think that the rule we announce today is compelled by our statutes and prior cases establishing the duty of parents to provide for the safety and welfare of their children. Further, we find our holding today to be consistent with our prior cases regarding the law of aiding and abetting. It remains the law that one may not be found to be an aider and abettor, and thus guilty as a principal, solely because he is present when a crime is committed. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970). It will still be necessary, in order to have that effect, that it be shown that the defendant said or did something showing his consent to the criminal purpose and contribution to its execution. *State v. Hildreth,* 31 N.C. (9 Iredell) 440 (1849). But we hold that the failure of a parent who is present to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed. *Cf. State v. Haywood,* 295 N.C. 709, 249 S.E. 2d 429 (1978) (When a bystander is a friend of the perpetrator and knows his presence will be regarded as encouragement, presence alone may be regarded as aiding and abetting.).

Thus, we hold that the trial court properly allowed the jury in the present case to consider a verdict of guilty of assault with a deadly weapon inflicting serious injury, upon a theory of aiding and abetting, solely on the ground that the defendant was present when her child was brutally beaten by Hoskins but failed to take all steps reasonable to prevent the attack or otherwise protect the child from injury. Further, the jury having found that the defendant committed an act of omission constituting consent to and encouragement of the commission of the crime charged, the defendant would properly be found to have aided and abetted the principal. A person who so aids or abets another in the commission of a crime is equally guilty with that other person as a principal. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970). Therefore, we find no error in the trial court's instructions, the verdict or the judgment on the charge of assault with a deadly weapon inflicting serious injury.

[2] The defendant also contended before the Court of Appeals that, if she is guilty of any crime, she is guilty of the misde-

meanor offense of child abuse proscribed in G.S. 14-318.2. Although the defendant may well be guilty of a violation of that statute, this fact would not preclude her conviction in the present case of assault with a deadly weapon inflicting serious injury in violation of G.S. 14-32(b). A violation of G.S. 14-32(b) requires proof of an assault by use of a deadly weapon by which serious injury was inflicted. These elements are not elements of a violation under G.S. 14-318.2. To obtain a conviction under G.S. 14-318.2, on the other hand, the State must show that the alleged acts were by a parent of a child less than 16 years of age. These elements are not elements of a violation of G.S. 14-32(b). Even if it is assumed that acts of the defendant comprised violations of both statutes, certain elements must be shown to support a conviction for violation of each statute which are not required to support a conviction for violation of the other. Therefore, neither statute proscribes a crime which is a lesser included offense of the other, and conviction or acquittal of one will not support a plea of former jeopardy against a charge for violation of the other. *See State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967). In such instances a defendant properly may be convicted of violations of both statutes when the same overall course of conduct by the defendant shows the existence of all of the necessary elements of each statute. This contention is without merit.

[3] The defendant also assigns as error the action of the trial court in allowing Dr. Ingram to give his opinion as a medical expert concerning the injuries to the defendant's baby, Lamont Walden. The defendant contends that the trial court erred in allowing certain of the doctor's testimony into evidence since that testimony was not given in response to properly framed hypothetical questions nor based upon the witness's personal knowledge and observation. In the present case, the doctor had made a thorough physical examination of the baby. We find that the answers he gave at trial concerning the condition of this child simply related his expert opinion based on facts which he himself had observed during his examination of the child. As such, his answers were properly admitted into evidence. *State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976).

[4] The defendant additionally assigns as error the action of the trial court in allowing into evidence testimony tending to show that Hoskins had committed other attacks against the children in

the presence of the defendant. The general rule is that the State may not offer proof of another crime independent of and distinct from the crime for which the defendant is being prosecuted even though the separate offense is of the same nature as the crime charged. Here, however, such evidence was competent as it tended to exhibit a chain of circumstances in respect to the matter on trial which were so connected with the offense charged as to throw light upon the identity of Lamont's attacker and to make out the *res gestae*. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

[5] The defendant further assigns as error the trial court's denial of her motion to dismiss in which she contended that the State did not bring her to trial within the time limits contained in G.S. 15A-701, the Speedy Trial Act. We find this assignment and contention also without merit. The State first initiated criminal charges against the defendant by warrant dated 12 December 1979 charging that the defendant committed misdemeanor child abuse on 8 December 1979. That charge was dismissed on 25 April 1980. A second warrant for the defendant's arrest was issued on 3 April 1980 charging that, on or about 9 December 1979, the defendant assaulted Lamont Walden, age one year, with intent to kill inflicting serious injury. Pursuant to this second warrant, the defendant was indicted on 28 April 1980 for the 9 December 1979 assault upon her son resulting in the conviction before us on appeal in this case. This case came on for trial on 25 August 1980. The defendant moved to dismiss the case under the provisions of G.S. 15A-701(a1) requiring that she be tried within the 120 days of indictment. Subsection (3) of this statute provides that, if a charge is dismissed and the defendant later charged with the same offense or an offense based upon the same act or transaction or part of a single scheme or plan, the trial must take place within 120 days of the original charge. The defendant contends that the misdemeanor child abuse on 8 December and the felonious assault on 9 December were part of a single plan and that subsection (3) applies and prohibited her trial on the charges of which she was convicted. We do not agree. The evidence is uncontradicted that there were two separate assaults, one on 8 December and one on 9 December 1979. Although the evidence tended to indicate the knowledge of the defendant with regard to both assaults, there was nothing to indicate that they were part

of a continuous plan or scheme. At most, the sequence of assaults tended to show the intent and *quo animo* of the defendant and Hoskins. They did not, in our view, establish a "series of acts" or a "single scheme or plan" within the meaning of subsection (3) of the statute.

The defendant has failed to show prejudicial or reversible error occurring in the trial court. The decision of the Court of Appeals is reversed and this cause is remanded to that Court with instructions to remand to the Superior Court, Wake County, for reinstatement of the verdict and the 27 August 1980 Judgment entered in Superior Court.

Reversed and remanded.

Justice MARTIN took no part in the consideration or decision of this case.