833 P.2d 1146

STATE of New Mexico,
Plaintiff–Appellee,

v.

Edmundo OROSCO, Defendant–
Appellant.

STATE of New Mexico,
Plaintiff–Appellee,

v.

Juan TREVINO, Defendant–Appellant.

Edmundo OROSCO, Petitioner,

v.

STATE of New Mexico, Respondent.

Nos. 19956, 19957 and 19999.

Supreme Court of New Mexico.

Jan. 7, 1992.

Sammy J. Quintana, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for Edmundo Orosco.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for Juan Trevino.

Tom Udall, Atty. Gen., William McEuen, Patricia Gandert, Asst. Atty. Gen., Santa Fe, for State of N.M.

## OPINION

MONTGOMERY, Justice.

The first two of these three cases were filed in this Court after the court of appeals issued its opinion in each defendant's appeal from his district court convictions involving criminal sexual contact of a minor (CSCM) and certain other offenses. After both defendants had filed their briefs in the court of appeals, we held in *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991), that "unlawfulness" is an element of CSCM. In light of that decision, the court of appeals certified the first two cases to us, pursuant to NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1990), to answer the following question: "whether the conviction[s] of criminal sexual contact of a child under the age of thirteen must be set aside and remanded for new trial in light of" *Osborne*. The opinions of the court of appeals raising this question and recommending how the other questions raised on each defendant's appeal should be resolved will be published together with this opinion.[1] The facts in each case are set out in the applicable opinion. We accepted each certification, consolidated the two cases, and received simultaneous briefs from both sides addressing the issue certified.

Soon thereafter, each defendant applied for certiorari, requesting that we review the court of appeals' proposed disposition of the other issues discussed in the court's opinions. Although certiorari was not necessary for this Court to review these other issues, since jurisdiction over each defendant's entire case was transferred to this Court on our acceptance of the certifications,[2] we granted each petition for certiorari and consolidated the two certiorari proceedings with the two cases on certification. We have now concluded, however, that one of the issues in defendant Trevino's appeal—the attack on his convictions for contributing to the delinquency of a minor as violating principles of double jeopardy—requires further consideration and should be severed from our review of the other issues raised by the appeals and by defendant Orosco's petition for certiorari. Accordingly, we have today issued an order vacating our previous consolidation of Trevino's certiorari proceeding with the other

1. The separate opinions of Judge Hartz and Judge Chavez in *Orosco* (No. 19,956) and of Judge Donnelly in *Trevino* (No. 19,957) will also be published, along with the principal opinions of Judge Bivins (concurred in by Judge Minzner in No. 19,957) in both cases. 113 N.M. 789, 833 P.2d 1155, and 113 N.M. 804, 833 P.2d 1170.

2. *See Collins v. Tabet*, 111 N.M. 391, 404 n. 10, 806 P.2d 40, 53 n. 10 (1991) (Supreme Court jurisdiction following certification under Section 34–5–14(C) extends to entire case). Although the court of appeals indicated how it would rule on the other questions raised on appeal, by its certification the case remained undecided in that court and was transferred to this Court for decision.

cases and severing our review of Trevino's convictions for contributing to the delinquency of a minor from our review of the other issues discussed in this opinion.

We now make the following rulings in disposing of the remaining three cases: (1) We agree with Judge Bivins in *Trevino* (No. 19,957), 113 N.M. at 810, 833 P.2d at 1176, and with his implicit determination in *Orosco* (No. 19,956), 113 N.M. at 800, 833 P.2d at 1166, that the omission of an instruction on the element of unlawfulness in the offense of criminal sexual contact of a minor under age thirteen was not, under the circumstances of each case, fundamental error requiring reversal. (2) In defendant Trevino's appeal (No. 19,957), we affirm his convictions except the convictions for contributing to the delinquency of a minor, for the reasons stated in this opinion and in the court of appeals' opinion. (3) In defendant Orosco's appeal (No. 19,956), we affirm his convictions for the reasons stated in this opinion and in the court of appeals' opinion.

We turn first to an explanation of the reasons for our answer to the question certified by the court of appeals.

## I. FUNDAMENTAL ERROR

In *Osborne*, we held that unlawfulness is an essential element[3] of the offense of criminal sexual contact of a minor under age thirteen and that, under the circumstances of that case, omission of the element from the jury instruction on the offense constituted fundamental error requiring reversal. While the defendants in the present cases did not raise this ground for reversal in the court of appeals (since our decision in *Osborne* was issued after the briefing there was complete) and the court of appeals raised it on its own motion, defendants now seize on the point and argue that the absence of an instruction on an element of the crime is an error which deprives the trial court of jurisdiction and requires automatic reversal. To evaluate this contention requires us to review, once again, the concept of "jurisdictional error."

Beginning apparently with *State v. Walsh*, 81 N.M. 65, 463 P.2d 41 (Ct.App. 1969), New Mexico courts have referred to a trial court's failure to instruct upon the essential elements of a crime for which a defendant has been convicted as *jurisdictional* error. *See State v. Southerland*, 100 N.M. 591, 594, 673 P.2d 1324, 1327 (Ct.App.), *cert. denied*, 100 N.M. 689, 675 P.2d 421 (1983). However, we have abandoned application of the jurisdictional error

---

**3.** We reaffirm the statements in *Osborne*, 111 N.M. at 657–61, 808 P.2d at 627–31, that unlawfulness is an *element* of the offense of CSCM and reject Judge Hartz's suggestion in *Orosco*, 113 N.M. at 801, 833 P.2d at 1167, that perhaps our discussion was really intended to mean that lawfulness is an affirmative defense, on which an instruction need be given only when the issue is raised by the defendant.

We would add (to our discussion in *Osborne*) that the soundness of the holding that unlawfulness is an *element* of CSCM is confirmed by the fact that this Court and the Uniform Jury Instructions Committee for Criminal Cases clearly considered unlawfulness an element of the offense at the time the CSCM instructions were adopted. Each of the various instructions on CSCM, other than the instruction at issue in *Osborne* and these cases (SCRA 1986, 14–925), includes a provision which is intended to address the issue of unlawfulness. SCRA 1986, 14–921 committee commentary; *see* SCRA 1986, 14–921 to –924 and 14–926 to –936. Provisions similar to those in the other instructions, which might have covered the element of unlawfulness in Instruction 14–925, however, were simply left out.

It is not difficult to understand why this could have occurred. While the term "unlawful" may, as the committee commentary suggests, mean "without consent," *see* SCRA 1986, 14–921 committee commentary—thus permitting a minor legally to consent to sexual contact—the legislature doubtless did not intend that one could legally engage in sexual contact with a minor under the age of thirteen if the child consented. The committee apparently so believed and, under the view that "unlawful" means "without consent," left out any provision addressing that element from Instruction 14–925.

It is for the legislature to define crimes, however; and the term "unlawful" in the CSCM statute applies to offenses against minors of all ages, not just minors over thirteen years of age. NMSA 1978, § 30–9–13 (Cum.Supp.1991). Unlawfulness is considered an element of the crime for offenses against minors over thirteen, and it must be treated as such for the offense against minors under that age as well. As we determined in *Osborne*, the element must therefore be addressed by an instruction appropriate for the offense.

rule, thereby permitting a conviction to be affirmed, in cases where an element omitted from the instructions was not factually in issue. *See State v. Hargrove*, 108 N.M. 233, 236–37, 771 P.2d 166, 169–70 (1989) (if element "was not factually in issue, then the error in the instruction would be nonjurisdictional"); *see also Ortiz v. State*, 106 N.M. 695, 698, 749 P.2d 80, 83 (1988) (claim of jurisdictional error supported since element was factually in issue); *cf. State v. Bell*, 90 N.M. 134, 140–43, 560 P.2d 925, 931–34 (1977) (error not jurisdictional where element was not factually in issue and was a subsidiary fact).

■ The error in the cases before us could be considered to fall within this exception to the rule of jurisdictional error. However, we decline to describe what occurred in these cases under the rubric "jurisdictional error." Some New Mexico cases, in addition to using the phrase to denote error which may be raised for the first time on appeal, have used it to indicate that a court which has failed to instruct upon an essential element lacked the competency to convict the defendant. *See Southerland*, 100 N.M. at 594, 673 P.2d at 1327; *State v. Gunzelman*, 85 N.M. 295, 300–01, 512 P.2d 55, 60–61 (1973). To the extent our cases have held or implied that this error deprived the court of competency to act, we disagree and disapprove such holdings or implications. We agree with Judge Bivins that the term "jurisdictional error" should be confined to instances in which the court was not competent to act and that it is inappropriate to equate jurisdictional error with other instances in which an error may be raised for the first time on appeal.[4]

■ In civil cases, a failure to state a claim upon which relief may be granted does not deprive the court of its subject matter jurisdiction. *Sundance Mechanical & Util. Corp. v. Atlas*, 109 N.M. 683, 687–90, 789 P.2d 1250, 1254–57 (1990). Of course, fundamental rights of an accused,

which may not be present in the civil context, are implicated where the jury is permitted to return a conviction without having been instructed on an essential element of crime. This does not, however, diminish or eliminate the court's jurisdiction to act. We believe the principle governing failure to state a claim in a civil case applies to the deficiency in the instructions in these cases. By failing to instruct on an element of an offense, the trial court cannot really be said to have lost its competence to act in the matter. Rather, the deficiency in the instructions constitutes error, and it is the task of an appellate court to determine whether the error so undermined the reliability of the conviction or prejudiced the defendant's rights as to require reversal.

■ In *Osborne*, 111 N.M. at 662, 808 P.2d at 632, we determined that if the instructions omitted an element which was at issue in the case, the error could be considered fundamental: The question of guilt would be so doubtful that it would "shock the conscience" of this Court to permit the conviction to stand. In the present cases, however, the court of appeals has asked us to determine whether the rule of fundamental error applies in the opposite factual setting: "[A]bsent the essential element of 'unlawfulness' as required in Section 30–9–13, did fundamental error occur so as to require us to set aside the conviction[s]," in cases in which there was no claim or evidence that the touchings, if they occurred, were other than unlawful?

The element of unlawfulness clearly was not "in issue" in either of these cases. Defendant Orosco denied having been involved in the alleged incident. Trevino denied that the alleged incident took place. We do not look to the defendants' assertions alone, however, to reach this conclusion; we recognize that even if a defendant believed that he or she had performed an innocent or lawful touching, the defendant might prefer, as a matter of trial strategy

---

**4.** The distinction between jurisdictional and fundamental error is reflected in our Rules of Appellate Procedure. *See* SCRA 1986, 12–216(B) (appellate court may consider, even though not raised below, jurisdictional questions *or,* in its discretion, questions involving fundamental error).

or for some other reason, to deny that the incident occurred rather than attempt to establish that the touching, though it may have occurred, was lawful. The question is whether there was any evidence or suggestion in the facts, however slight, that could have put the element of unlawfulness in issue.

In neither case was there anything in the facts to suggest that the touchings, if they occurred, might have involved the provision of medical care, custodial care or affection, or any other lawful purpose. In *Orosco*, the principal (Villegas) was alleged to have fondled the child's intimate parts in the restroom of a bar. No other version of the facts relating to the manner of the touching was presented. In *Trevino*, the only evidence presented regarding the CSCM conviction at issue here (the touching of J.J.) was victim's description of an incident in which defendant fondled the 12–year-old boy's genitals for three hours in defendant's truck. In each case, either an unlawful touching occurred or it did not; in each case, the jury determined that it did.

 The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done. *Osborne*, 111 N.M. at 662, 808 P.2d at 632. Clearly, when a jury's finding that a defendant committed the alleged act, under the evidence in the case, necessarily includes or amounts to a finding on an element omitted from the jury's instructions, any doubt as to the reliability of the conviction is eliminated and the error cannot be said to be fundamental. The trial court's error in failing to instruct on an essential element of a crime for which defendant has been convicted, where there can be no dispute that the element was established, therefore does not require reversal of the conviction. We have recently so held, *see State v. Ortega*, 112 N.M. 554, 568–69, 817 P.2d 1196, 1210–11 (1991) (jury verdict of guilt for conspiracy to commit murder satisfied element of intent to kill); and this rule is consistent with the view of countless other jurisdictions, including the United States Supreme Court, which have considered this and substantially related questions. *See, e.g., Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) (despite *Sandstrom*[5] error removing issue from jury deliberations, "Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed."); *Willard v. People*, 812 F.2d 461, 463–65 (9th Cir.1987) (error harmless where jury could not have rendered verdict without also finding element omitted from instructions); *United States v. Hensel*, 711 F.2d 1000, 1005 (11th Cir.1983) ("When it is clear an element was not in dispute, and the transcript of the trial indicates sufficient evidence that the element was met, no prejudice results from the [removal of] the undisputed element from the jury."); *United States v. McCaskill*, 676 F.2d 995, 1002–03 (4th Cir.) ("There can be no 'fundamental error'" in failure to instruct on element when it is beyond dispute that element was met), *cert. denied* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed.2d 513 (1982); *Olar v. United States*, 391 F.2d 773, 775 (9th Cir.1968) (important rule that failure to instruct jury on every element constitutes plain error "is not one to be applied mechanically"; error not reversible where "it was not only undisputed but indisputable" that element was established); *State v. Avila*, 147 Ariz. 330, 338, 710 P.2d 440, 448 (1985) ("failure to instruct on a necessary element of an offense is not fundamental error where there is no issue as to that element"); *People v. Esquibel*, 794 P.2d 1065, 1066 (Colo.Ct.App. 1990) (omission not plain error where element not at issue); *State v. Correa*, 5 Haw.App. 644, 650, 706 P.2d 1321, 1325 (1985) (omission harmless where there was "uncontradicted and undisputed evidence" that elements were established); *State v. Redford*, 242 Kan. 658, 671–72, 750 P.2d 1013, 1022 (1988) (error harmless where no evidence that conduct occurred other than under circumstances proscribed by omitted

5. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

element); *State v. Cassada,* 58 Or.App. 84, 86–87, 647 P.2d 938, 939–40 (error in taking element from jury harmless where defendant conceded element), *modified on other grounds,* 59 Or.App. 482, 651 P.2d 171 (1982); *State v. Shaffer,* 18 Wash.App. 652, 653–54, 571 P.2d 220, 222 (1977) (error harmless where elements not at issue), *cert. denied,* 439 U.S. 1050, 99 S.Ct. 729, 58 L.Ed.2d 710 (1978); *cf. State v. Cawley,* 110 N.M. 705, 709–10, 799 P.2d 574, 578–79 (1990) (time not essential element of crime where "clearly established" that statute of limitations was met; failure to instruct not error); SCRA 1986, 14–902 to –962 (Orig.Pamp. & Cum.Supp.1991) (under former law, instruction that defendant was not spouse of criminal sexual contact or penetration victim not required unless sufficient evidence existed to raise issue and defendant requested instruction).

As indicated in these cases, under the rule of fundamental error reversal is required only when the interests of justice so require. A rule of automatic reversal would mandate a new trial in every instance of a failure to instruct, even though it was "not only undisputed but indisputable" that the element was met. *Olar,* 391 F.2d at 775. Such a result, in our view, "would be a perversion of justice, a classic demonstration of profoundly inequitable results that follow when the judiciary worships form and ignores substance." *Bell,* 90 N.M. at 142, 560 P.2d at 933. Applying a rule of automatic reversal is not required by the relevant constitutional principles and fails to take into account our role as an appellate tribunal.

In his special concurrence in *Orosco,* Judge Hartz argues that to affirm the convictions in the absence of an instruction on an essential element is to arrogate a function that belongs to the jury and amounts to a directed verdict with respect to that element of the offense. The error, it is maintained, therefore requires automatic reversal. While this argument has considerable appeal at first glance, we join with the numerous other courts that have dismissed similar challenges and reject it. Even if the error in the instant cases theoretically amounted to constitutional error, we believe the error does not require reversal where it is not fundamental and where there can have been no prejudice to the defendant's rights.

The reason that the burden is placed on the prosecution to prove beyond a reasonable doubt every element of the charged offense is "to ensure that only the guilty are criminally punished." *Rose,* 478 U.S. at 580, 106 S.Ct. at 3107. However, as the Court observed in *Rose,* when the verdict of guilty is correct beyond a reasonable doubt, despite an instruction which has relieved the state of this burden, "reversal of the conviction does nothing to promote the interest that the rule serves." *Id.* We agree that the purpose of the rule requiring proof beyond a reasonable doubt on each element is not served by mechanically requiring reversal even though the jury's findings, in light of the undisputed evidence in the case, necessarily establish that the element was met beyond a reasonable doubt. We therefore do not believe that affirming defendants' convictions in these cases, despite the failure to instruct on unlawfulness, offends any relevant constitutional principles.

Instructions involving *Sandstrom* error, conclusive presumptions, and misdescriptions of essential elements—like instructions that relieve the state of its burden to prove an essential element—all "deprive[ ] the jury of its fact finding role." *Carella v. California,* 491 U.S. 263, 270, 109 S.Ct. 2419, 2423, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring); *see also Rose,* 478 U.S. at 582, n. 11, 106 S.Ct. at 3108, n. 11 (*Sandstrom* error, and other errors that may have affected instructions or record, "all theoretically impair the defendant's interest in having a jury decide his case"). The Supreme Court has made clear, however, that constitutional error of this type does not require reversal without regard to the evidence in the particular case and is therefore not excepted from the harmless error rule. *Carella,* 491 U.S. at 266–67, 109 S.Ct. at 2421; *Rose,* 478 U.S. at 579–84, 106 S.Ct. at 3107–09.

A rule of automatic reversal would also fail to take into account the nature of an

appellate court's role on review. Our rules authorize reversal for errors occurring at trial, even if of constitutional dimension, only when the interests of justice require or when the trial court has exceeded the scope of its powers. *See* SCRA 1986, 1-061, 12–216. While the Court in *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828 & n. 8, 17 L.Ed.2d 705 (1967), declared that some constitutional errors require reversal without regard to the evidence in the particular case, these rare exceptions are those which "necessarily render a trial fundamentally unfair." *Rose*, 478 U.S. at 577, 106 S.Ct. at 3105; *see Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (adjudication by biased judge). It cannot be said that every failure to instruct on an essential element necessarily renders a trial fundamentally unfair. We are therefore justified in examining the facts in each case to determine whether the error in the instructions rose to the level of fundamental error so as to justify reversal.

We emphasize that our holding today is narrow. In these cases, as in *Osborne*, the trial courts did not remove an issue from the jury by, in effect, granting a partial directed verdict; nor did they refuse to give a proper instruction on the element tendered by the defendant. Rather, the cases went to trial before we recognized in *Osborne* that unlawfulness was an element of CSCM, and the trial courts followed their duty to give the uniform jury instruction on the essential elements of criminal sexual contact of a minor under thirteen. *See Jackson v. State*, 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) (uniform jury instruction for elements of crime generally must be used without substantive modification). This does not excuse omission of the element; reversal would be required if a defendant had been found guilty under an instruction which did not include an essential element of the crime and that element were in issue. However, the circumstances of these cases are important because they demonstrate that in neither case did the trial court improperly remove the issue of unlawfulness from the jury.

The circumstances of these cases are important also because, to the extent we affirm the convictions, we do not in effect direct a verdict for the state or make an independent finding on the element of unlawfulness. Rather, we rest our decision on the basis that, under the undisputed evidence of unlawfulness in the cases and the facts upon which the juries relied to find that defendants committed the acts, the juries themselves effectively determined the existence of the omitted element. *Cf. Rose*, 478 U.S. at 580–81, 106 S.Ct. at 3107 (affirming conviction, despite *Sandstrom* error, not equivalent to directed verdict for state; "In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause the injury.") (emphasis in original).

Our decision today preserves the fundamental right of a criminal defendant to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt, while at the same time affording a realistic and substantive rather than an emptily formalistic approach to this problem. The record as to unlawfulness in these cases was undisputed and indisputable, and no rational jury could have concluded that defendants had committed the acts without also determining that the acts were performed in the manner proscribed by law. The error in the jury instructions, therefore, was not fundamental and does not require reversing defendants' convictions.

## II. OTHER ISSUES—TREVINO

■ Trevino's first issue on appeal relates to his convictions for contributing to the delinquency of a minor, which he asserts should be set aside on double jeopardy grounds. As stated previously, this issue will be decided after issuance of this opinion, in our decision on certiorari in Trevino's case (No. 19,997). In this opinion we dispose of all other issues raised by Trevino's appeal and by his petition for certiorari.

His principal attack on his convictions for CSCM is that the evidence was insufficient to support those convictions to the extent that they were based on his alleged use of a position of authority. He contends that evidence was lacking to establish that he actually used his position of authority as J.C.'s employer to coerce the victim into submitting to the sexual contact.

In a criminal case, we will affirm the jury's finding of guilt so long as "substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *Id.*

In this case, the attention of the jury clearly was directed towards the element of use of authority to coerce the child to submit. The jury was instructed that if it had a reasonable doubt as to defendant's guilt of this crime, then it must consider whether defendant was guilty of a lesser included form of CSCM, involving the use of physical force or violence to accomplish the touching. This lesser version of the offense does not refer to use of authority to coerce. Under these instructions, the jury found that defendant had used his position of authority to coerce the minor to submit to sexual contact. For the reasons set out by the court of appeals in its opinion, we believe there was substantial evidence from which the jury could so find. *See State v. Corbin*, 111 N.M. 707, 708–10, 809 P.2d 57, 58–60 (1991).

On all other issues raised in Trevino's appeal, we affirm for the reasons stated in the court of appeals' opinion.

### III. OTHER ISSUES—OROSCO

#### A. *Accessorial Liability*

On certiorari, Orosco first challenges the "alternative theory" of accessorial liability

discussed by the court of appeals as supporting his convictions as an accessory to CSCM and attempted criminal sexual penetration of a minor. Although the court explicitly declined to rely on this theory, the court explained that accessorial liability could be based upon the theory that the child's caretaker, who was present, failed to take all steps reasonably possible to protect the child from attack. *See State v. Walden*, 306 N.C. 466, 293 S.E.2d 780 (1982). Defendant argues that this theory is inconsistent with well-established New Mexico case law, which provides that mere presence, without some outward manifestation or expression of approval, is insufficient to sustain a conviction as an accessory. *See State v. Salazar*, 78 N.M. 329, 331, 431 P.2d 62, 64 (1967).

We neither approve nor disapprove of the "alternative theory" discussed in the court of appeals' opinion. Because we believe the court properly affirmed the convictions on the basis it in fact relied upon—namely, that there was substantial evidence to support the convictions under ordinary principles of accessorial liability based upon affirmative conduct—we find it unnecessary to reach the question presented by defendant regarding this alternative theory.

#### B. *Sufficiency of the Evidence*

■ This suggests our answer to the second issue we consider on certiorari, defendant's challenge to the sufficiency of the evidence supporting his convictions.[6] Defendant raises two separate arguments on this point.

First, he asserts there was insufficient evidence that he affirmatively aided or encouraged Villegas in the commission of the crimes. We have reviewed this contention and conclude that the court of appeals adequately responded to defendant's claim. As the court of appeals notes, there was direct testimony from the victim and abun-

---

6. Although defendant in his petition for certiorari raised the issue specifically as a challenge to the sufficiency of the evidence under the court of appeals' alternative theory, we consider defendant's point as a general challenge to the sufficiency of the evidence in support of his conviction.

dant circumstantial evidence to support the conclusion that defendant helped Villegas commit the unlawful acts. For the reasons set out in the court of appeals' opinion, therefore, we believe there was substantial evidence to support the jury's verdicts.

 Second, defendant claims that the evidence itself was inadequate to support the verdicts because it consisted solely of the prior inconsistent statements of the victim. Prior inconsistent statements of a witness are, of course, admissible as substantive evidence. SCRA 1986, 11–801(D)(1)(a). However, where the trustworthiness of the prior statements is uncorroborated, they may, as a matter of due process, be insufficient as the sole basis for a conviction. *See State v. Maestas,* 92 N.M. 135, 145, 584 P.2d 182, 192 (Ct.App. 1978).

For the reasons set out in the opinion of the court of appeals, we do not believe the convictions rested entirely on the victim's prior inconsistent statements, nor was the trustworthiness of those statements uncorroborated. The circumstances surrounding the events, the statements and testimony of the victim, and the actions and statements of defendant and the victim's mother, all reinforce the trustworthiness of the victim's prior statements, and much of it constitutes independent circumstantial evidence supporting the jury's verdicts.

On all other issues raised in Orosco's appeal and summarily in his petition for certiorari, we affirm for the reasons stated in the court of appeals' opinion.

## IV. DISPOSITION

For the reasons set out above, defendant Orosco's convictions are affirmed. We affirm defendant Trevino's convictions except those for contributing to the delinquency of a minor, which we shall dispose of by subsequent opinion in Cause No. 19,997.

IT IS SO ORDERED.

BACA, FRANCHINI and FROST, JJ., concur.

RANSOM, C.J., specially concurs.

RANSOM, Chief Justice (specially concurring).

I concur in the majority's affirmance of the convictions at issue. Justice Montgomery is without a worthy adversary to deny his continuing attack on the use of the term "jurisdictional error" to describe anything other than a lack of subject matter or personal jurisdiction. He would exclude from "jurisdictional error" any other lack of power, authority, or competence to act. His influence is apparent in the recent opinion authored by me in *Govich v. North American Systems, Inc.,* 112 N.M. 226, 230, 814 P.2d 94, 98 (1991) (proper to refer to mandatory appellate rules concerning the time for filing notice of appeal as "mandatory" and to discard the term "jurisdictional" that has been used over time by most federal and state courts to describe a mandatory precondition to the exercise of jurisdiction). However, as I stated in a special concurrence to *Sundance Mechanical & Utility Corp. v. Atlas,* 109 N.M. 683, 789 P.2d 1250 (1990), "I would not abandon so quickly the *principle* that a court lacks power to grant relief on a complaint that fails to state a cause of action, and that 'power or authority' is a jurisdictional issue that may be raised for the first time on appeal * * *." 109 N.M. at 692, 789 P.2d at 1259 (emphasis added).

What is at issue, regardless of terminology, is whether bright-line principles of this Court are to give way to case-by-case analysis based upon principles of justice and conscience. Where this Court has decided as a policy matter to draw certain bright lines to govern the power or authority of the courts, it may be well to describe the crossing of those lines in some terminology other than "jurisdictional error"— but that is the terminology we find in the cases. As a matter of policy, we have adopted a mechanistic approach, but not one that "worships form and ignores substance."

I agree, however, "when a jury's finding that a defendant committed an alleged act, under the evidence in the case, necessarily includes or amounts to a [conscious and indisputable] finding on an element omitted

from the jury's instructions, any doubt as to the reliability of the conviction is eliminated and the error cannot be said to be fundamental." I do not agree that the rule of fundamental error in not instructing on an essential element of a crime applies "only if * * * substantial justice has not been done." The latter application of the fundamental error doctrine is an unjustified shift from the concept of "jurisdictional error" that has described the fundamental error conclusively presumed to arise from failure to instruct on an essential element that defendant has not affirmatively conceded. *See State v. Hargrove,* 108 N.M. 233, 235–36, 771 P.2d 166, 168–69 (1989) (failure to give an instruction on an essential element is jurisdictional and reversible error unless the defendant affirmatively has conceded the facts underlying the essential element). The bright line has served us well and we should go no further here than to add the "necessarily established" exception to the jurisdictional error doctrine (by whatever name) along with the "affirmative concession" exception.