639 S.E.2d 466

**The STATE, Respondent,**

v.

**Theresa CLAYPOOLE, Appellant.**

**No. 4189.**

Court of Appeals of South Carolina.

Heard Oct. 10, 2006.

Decided Dec. 21, 2006.

---

474

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

WILLIAMS, J.:

A Lexington County jury convicted Theresa Claypoole (Claypoole) of contributing to the delinquency of a minor and accessory before the fact to criminal sexual conduct with a minor. Claypoole appeals her conviction of accessory before the fact, claiming the trial court should have directed a verdict in her favor due to insufficient evidence. We affirm.

## FACTS

Beginning in 1999, Kermit Claypoole (Kermit) resided with Claypoole and her two daughters from a previous marriage, K.H. and E.H. During this time, Kermit engaged in conversations with the two daughters that were sexual in nature. E.H., Claypoole's older daughter, testified that Kermit would ask the girls if they wanted to have "fun" with him, while rubbing E.H.'s arm in "a sexual sense." Both K.H. and E.H. admitted they told their mother of Kermit's actions with Claypoole's reassurance that she would talk with Kermit about his behavior.

Shortly thereafter, the girls told their biological father about Kermit's advances. Based on this information and Kermit's previous conviction of two counts of criminal sexual conduct with a minor, the court granted the biological father sole custody of the girls; however, by September of 2001, they again resided with their mother and Kermit in South Carolina.

Over the next several months, Claypoole often left the girls alone with Kermit, despite her knowledge that Kermit was a registered sex offender and that a court order prohibited any contact between him and the girls. During Claypoole's absence, Kermit re-initiated conversations with E.H. and K.H. about sex. Once again, Claypoole reassured E.H. that she would talk to Kermit about his inappropriate interactions with the girls; however, E.H.'s journal entries indicate Claypoole took no action. She wrote, "Hey, last night I heard the worst thing, the sound of my little sis f[. . .]ing. [M]om is not afraid of [K.H.] getting knocked up. Now that is whack[1]." While E.H. did not engage in any sexual acts with Kermit, her younger sister, K.H., admitted to having sex with Kermit, which resulted in her pregnancy.

K.H. also acknowledged that Kermit told her mother about the sexual relationship, and her mother then told K.H. to have sex with Kermit as long as it felt good. Regarding the propriety of Claypoole's forty-nine-year-old husband sleeping with her thirteen-year-old daughter, Claypoole stated she did not know why everyone made such a big deal out of them having sex because in West Virginia, where she was raised, the older men often taught young girls about sex to prepare them for their wedding nights.

After the State's presentation of evidence, Claypoole moved for a directed verdict as to the accessory before the fact charge. Claypoole renewed this motion after the close of evidence, and the court again denied this motion. The jury

---

1. E.H.'s journal entry, which she read during her testimony, reflects her disdain over her mother's indifference towards Kermit's illicit relationship with K.H. The court reporter, unfamiliar with the slang term "wack," misquoted E.H. The absence of "h" in "wack" differentiates it from "whack," which means "to strike with a smart or resounding blow." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1344 (10th ed.1993). "Wack," as defined in the Urban Dictionary and used in this context, means "appalling." *See* THE URBAN DICTIONARY 331 (2005).

found Claypoole guilty of accessory before the fact to criminal sexual conduct with a minor and contributing to the delinquency of a minor. The trial court sentenced Claypoole to concurrent terms of ten years for accessory before the fact and three years for contributing to the delinquency of a minor, all terms suspended to five-years probation. This appeal follows.

## LAW/ANALYSIS

On appeal, Claypoole argues the trial court erred in failing to direct a verdict for the charge of accessory before the fact as the evidence offered by the State was insufficient as a matter of law to sustain the jury's conviction. We disagree.

"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). Furthermore, a defendant is entitled to a directed verdict at the trial level when the State does not produce evidence of the offense charged; however, if the State presents *any* evidence at trial which reasonably tends to prove the defendant's guilt, the case must go to the jury. *State v. Gentry,* 363 S.C. 93, 103, 610 S.E.2d 494, 500 (2005); *State v. Ezell,* 321 S.C. 421, 424, 468 S.E.2d 679, 680 (Ct.App.1996) (emphasis added).

In deciding whether the trial court erred in failing to direct a verdict in favor of a defendant in a criminal case, the appellate court must view the testimony in the light most favorable to the State. *State v. Massey,* 267 S.C. 432, 442, 229 S.E.2d 332, 337 (1976). If there is any direct or substantial circumstantial evidence tending to prove the guilt of the accused, or from which guilt may be fairly and logically deduced, the case should be submitted to the jury. *Sellers v. State,* 362 S.C. 182, 189, 607 S.E.2d 82, 85 (2005).

Claypoole argues the State failed to establish the requisite elements of accessory before the fact to criminal sexual conduct to justify her conviction. Criminal sexual conduct with a minor in the second degree is defined as "sexual battery with a victim who is fourteen years of age or less but who is at least eleven years of age." S.C.Code Ann.

§ 16–3–655(2) (1984) (current version at S.C.Code Ann. § 16–3–655(B) (2005)).[2] The State must prove: (1) the accused advised and agreed, urged, or in some way aided some other person to commit the offense; (2) the accused was not present when the offense was committed; and (3) some principal committed the offense. *State v. Farne,* 190 S.C. 75, 84, 1 S.E.2d 912, 915–16 (1939).

Neither party presented evidence that Claypoole was present when the sexual misconduct occurred. The uncontroverted testimony establishes that the principal, Kermit, committed the substantive offense of criminal sexual misconduct. Consequently, for Claypoole to be an accessory before the fact, she must have advised, agreed, urged or in some way aided Kermit to commit criminal sexual misconduct against K.H.

While Claypoole admits she was negligent in "foolishly fail[ing] to pick up on her children's hints at improper conduct," she argues the State presented no evidence that she either knew about the conduct or actively aided Kermit in his actions. We find this argument to be without merit.

Our sister state of North Carolina has dealt with a similar issue in *State v. Walden,* 306 N.C. 466, 293 S.E.2d 780 (1982). In that case, the North Carolina Supreme Court upheld the trial court's conviction of a mother for aiding and abetting an assault with a deadly weapon by another person against her child when the mother permitted another person to severely beat her son in the mother's presence. *Id.*

In general, North Carolina law on aiding and abetting requires a person to say or do something to demonstrate consent to a felonious purpose and to contribute to the execution of a crime.[3] *Id.* at 476, 293 S.E.2d at 787. The court in

---

**2.** Because Claypoole's misconduct occurred in 2001, the court cites to the 2001 version of S.C.Code Ann. § 16–3–655 as amended. While the legislature has revised this section since 2001, it did not alter the substantive statutory language for criminal sexual conduct with a minor in the second degree as applied to Claypoole.

**3.** In distinguishing the crime of accessory before the fact from aiding and abetting, the North Carolina Supreme Court stated: "The distinction between the two ... lies in the elements of presence or absence at the time the crime is being committed. An accessory before the fact must be absent from the scene of the offense, while an aider and abettor

*Walden* recognized a person is under no general duty to prevent the commission of a crime solely because that person is present; however, the court also acknowledged the nature of the parent-child relationship places a legal duty upon the parent to take all reasonable steps to protect the child from harm. *Id.* at 472, 293 S.E.2d at 784; *Id.* at 475, 293 S.E.2d at 786. Thus, a parent's failure "to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed." *Id.* at 476, 293 S.E.2d at 787.

Like the mother in *Walden,* Claypoole was aware that her child was at risk of suffering injury at the hands of another, and she was in a position to prevent the offense against her child. Unlike the mother in *Walden,* Claypoole was not present when the substantive offenses against K.H. were committed. However, this Court finds the North Carolina Supreme Court's reasoning in *Walden* persuasive and instructive in deciding this matter.

The State presented sufficient evidence that Claypoole aided and encouraged Kermit in committing criminal sexual conduct against K.H. In 1999 and 2001, E.H. told her mother about Kermit's inappropriate comments and invitations to have "fun," and Claypoole promised to talk with Kermit. K.H. testified that her mother knew about Kermit's sexual innuendos as well as her sexual relationship with Kermit. When Kermit told Claypoole about the sex, and Claypoole subsequently told K.H. it was all right as long as it felt good,[4]

---

must be actually or constructively present at the scene." *State v. Graham,* 303 N.C. 521, 525, 279 S.E.2d 588, 591 (1981). Similarly, to aid and abet in South Carolina, one must "[help], assist, or facilitate the commission of [the] crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite [the] commission [of the crime]." *State v. Smith,* 359 S.C. 481, 491, 597 S.E.2d 888, 892 (Ct.App.2004) (citing Black's Law Dictionary 68 (6th ed.1990)). While the law distinguishes these two crimes based on one's presence or lack thereof, the required substantive actions are virtually the same to render one guilty as an accessory or an aider and abettor.

4. Claypoole argues for the first time during oral argument that the circuit court improperly considered this statement. She argues the court should not have used the state's reply testimony in considering Claypoole's directed verdict motion. We reiterate that the court, in

Claypoole was no longer a passive party. Her approval, conveyed to both K.H. and Kermit, effectively aided and encouraged Kermit in his actions against K.H.

Furthermore, Claypoole allowed Kermit to reside in the same house with the girls, thus aiding him in the commission of these acts. She was fully aware a court order prohibited any contact between Kermit and the girls, but she did nothing to prevent the situation. In addition, when Claypoole learned Kermit was having sex with K.H., she continued to aid Kermit by her failure to stop him from having sex with K.H. E.H.'s journal entries reveal that Claypoole agreed to this conduct by ignoring E.H.'s complaints and appearing to be unconcerned with the prospect of K.H. becoming pregnant. Finally, Claypoole showed her approval and apparent lack of concern for Kermit's actions by telling her neighbor that she did not understand why everyone was so concerned with Kermit and K.H. having sex. According to the neighbor's testimony, Claypoole stated that permitting older men to have sex with young girls was a good way to teach them about sex.

Claypoole's consistent failure to prevent this misconduct or otherwise protect K.H. and her decision to live with Kermit, despite the presence of her children, constituted consent and encouragement to the commission of this crime. Given the foregoing, sufficient evidence exists to sustain Claypoole's conviction of accessory before the fact to criminal sexual conduct with a minor.

## CONCLUSION

This Court is not concerned with the weight of evidence, only its existence. The State presented direct and substantial circumstantial evidence that Claypoole was an accessory before the fact to criminal sexual conduct; thus, we hold the trial court properly denied Claypoole's motion for a directed verdict.

---

ruling on a directed verdict motion, can consider *any evidence* presented by the State, which tends to prove a defendant's guilt. *See Ezell,* 321 S.C. at 424, 468 S.E.2d at 680.

Accordingly, the trial court's decision is
**AFFIRMED.**

GOOLSBY and BEATTY, JJ., concur.