Kimberly LANE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 95–SC–941–DG.

Supreme Court of Kentucky.

June 19, 1997.

As Modified on Denial of Rehearing
Sept. 4, 1997.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler, III, Attorney General, Lana Grandon, Assistant Attorney General, Criminal Appellate Division, Frankfort, Phillip Patton, Special Assistant Attorney General, Glasgow, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed the trial court when it sustained a motion for a new trial and set aside the conviction of Lane for complicity to commit first-degree assault on her infant daughter.

The sole issue is whether the trial judge correctly determined that the defendant did not have a legal duty to take some affirmative action to prevent the commission of an assault upon her infant daughter. Lane argues that her conduct was insufficient to support an indictment and conviction for complicity to commit assault under the legal duty theory of KRS 502.020(1)(c).

Lane and her domestic companion, Bryan Tubbs, were prosecuted for the physical injuries suffered by Lane's two-year-old daughter. Tubbs was charged with assault in the first degree and Lane was charged with complicity to commit assault in the first degree. They were tried together. Their defense was that the physical injuries suffered by the child were the result of a fall down a flight of stairs.

The indictment charged that Lane "aided, counseled, or attempted to aid Bryan Tubbs in the offense of assault in the first degree when he intentionally caused serious physical injury to the child" with a dangerous instrument, manifesting extreme indifference to the value of human life.

The evidence presented by the prosecution consisted of the testimony of three physicians

who treated the victim at an emergency room and later at a Louisville hospital. According to the doctors, the victim sustained numerous bruises, abrasions and contusions, including a skull fracture. The injuries were not consistent with the history given by the mother and Tubbs that the injuries were the result of a recent fall down the stairs. Many of the injuries were linear, appeared to have resulted from the child being struck with a linear object, and did not appear to be accidental but were of an inflicted nature. Lane was found guilty by a jury of complicity to commit assault in the first degree, and Tubbs was found guilty of assault in the first degree.

On Lane's motion, the trial judge set aside her conviction and granted a new trial, reasoning that no legal duty existed which required Lane to prevent the assault on her child pursuant to *Knox v. Commonwealth*, Ky., 735 S.W.2d 711 (1987). The Court of Appeals reversed the ruling of the trial judge and this Court granted discretionary review.

The only issue properly before this Court is whether the trial judge committed reversible error when he found that there was no legal duty imposed on the defendant to prevent the abuse of her child. We affirm the decision of the Court of Appeals because the trial judge erred when he sustained the motion for a new trial and set aside the conviction.

KRS 620.010 specifically states that children have a fundamental right to be free from physical injury as well as other types of injury. KRS 620.030 establishes an affirmative duty to report dependency, neglect or abuse. KRS 620.010 is a statement of the legislative purpose on which the chapter is based. It should be noted that Chapter 620 replaced KRS 199.335(2) and the other sections of that law in 1986. *Knox, supra,* was decided on the basis of the law in existence at the time of the offense which was KRS 199.335(2).

We note that KRS 405.020 provides that the parents of a child shall nurture that child. Although we do not base our decision on an application of that provision of the statute, we observe that a secondary meaning to the commonly understood "nurture" means the act of taking care of children and certainly does not involve the tolerance of physical injury.

KRS 508.100 provides that a person is guilty of criminal abuse in the first degree when he intentionally permits a person of whom he has actual custody to be abused and thereby places him in a situation that may cause him serious physical injury. KRS 508.110 provides that one is guilty of second-degree criminal abuse if he engages in the same conduct wantonly, and KRS 508.120 provides that one is guilty of the offense of criminal abuse in the third degree if one engages in this type of conduct recklessly.

In view of the expressed statement of legislative intent of Chapter 620, we hold that KRS 620.010 creates an affirmative duty for the parent of a child to prevent such physical injury which would result in an assault on that child. This duty was clearly violated by Lane pursuant to the evidence presented at trial.

There is little if any significant difference between the words of KRS 199.335, which was the law prior to 1987, when it was repealed and replaced by a new section on dependency, neglect and abuse in Chapter 620. However, it does provide clear legislative intent to protect children from physical injury. In *Knox, supra,* a majority of this Court stated that there was no legal duty on the mother of a child who was the victim of first-degree rape, even though she was aware of criminal sexual conduct between her husband and her daughter, so as to impose a conviction for complicity for first-degree rape. The narrow issue presented in this case is whether, since the adoption of Chapter 620, an affirmative duty has been placed on a person, parent or guardian to prevent physical injury to a child. *See* KRS 620.010.

The question is the proper method to be used by a prosecutor in applying a statute in the role of an affirmative legal duty placed on a parent or other person in regard to the

obligation to prevent physical injury so as to raise the possibility of a conviction for complicity. In view of the natural relationship between parent and guardian, KRS 620.010 creates an affirmative duty for parents and guardians to prevent physical injury which results in an assault on the child. Others covered by the statute have an obligation to report which is a different duty. *Commonwealth v. Chandler*, Ky., 722 S.W.2d 899 (1987), a unanimous decision of this Court, establishes assault and abuse as parallel crimes. The prosecutor has the option to proceed under a proper set of facts for either abuse or assault. It must be remembered that conduct based on the failure to act where there is a legal duty to act is still punishable pursuant to KRS 502.020(1)(c). The legislature has clearly expressed their intent to punish those who through passive conduct allow physical injury to children.

Lane raises two additional questions which are not properly before this Court. Lane argues that criminal abuse, rather than complicity to commit assault, was the proper charge in this case and that she did not receive notice that she was being charged with complicity under the legal duty theory. The only issue properly before this Court is a narrow one which is whether the trial judge committed reversible error when he found that there was no legal duty imposed on Lane to prevent physical injury to the child. Accordingly, any review of these secondary arguments must be denied.

In any event, Lane's contentions are without merit. The statutes of Kentucky define many criminal offenses. A single criminal act may violate more than one statute. Under such circumstances, it is within the proper discretion of the prosecutor to decide which crime the defendant should be charged with. *See Wombles v. Commonwealth*, Ky., 831 S.W.2d 172 (1992); *Morris v. Commonwealth*, Ky.App., 783 S.W.2d 889 (1990). The selection of complicity to assault, rather than complicity to abuse, was not reversible error.

In this case, Lane was charged with a violation of KRS 502.020. The indictment as returned by the grand jury was sufficient to give notice to Lane of the charge that she would need to defend against. RCr 6.10(2); *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804 (1991); *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1 (1977). If Lane believed it was necessary for more specificity to the charges, she could have filed a motion for a bill of particulars. *Hampton v. Commonwealth*, Ky., 666 S.W.2d 737 (1984). Lane waived this issue when she failed to do so. *Howard v. Commonwealth*, Ky., 554 S.W.2d 375 (1977).

To the degree that *Knox v. Commonwealth* conflicts with this decision, *Knox* is overruled. It is the holding of this Court that Chapter 620 of the Kentucky Revised Statutes has created an affirmative duty to prevent physical injury to children. Prosecution for such conduct can fall either under the assault provisions of the statute or under the abuse provisions of the statute.

The decision of the Court of Appeals is affirmed. The judgment of conviction is reinstated.

GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs by separate opinion in which JOHNSTONE, J., joins.

STUMBO, J., dissents by separate opinion in which STEPHENS, C.J., joins.

COOPER, Justice, concurring.

I agree with the Court of Appeals and with the plurality opinion of this Court that, contrary to our holding in *Knox v. Commonwealth*, Ky., 735 S.W.2d 711 (1987), Appellant was charged with a unique legal duty to protect her child from assault and injury at the hands of her domestic companion and codefendant, Bryan Tubbs. However, I do not find the source of that duty in the language of KRS Chapter 620.

Although KRS 620.010 pronounces a legislative purpose that children have certain fundamental rights which must be protected and

preserved, including the right to be free from physical, sexual or emotional injury or exploitation, that pronouncement only confirms that children have the same such rights as adults. The statute goes on to note that in order to protect and preserve those rights, it is necessary on occasion "to remove a child from his or her parents." Thus, the purpose of this statute is not to establish a new and unique parental duty to protect a child from forces outside the parent-child relationship, but to establish the basis for removing a neglected or abused child from the custody of his abusive parents. And KRS 620.030, the so-called "reporting statute," does not even specify parents as being among those obligated to report known or suspected abuse, but includes them at best in the catch-all category of "all persons." Among those specified in the statute as having a duty to report the dependency, neglect or abuse of a child if he or she "knows or has reasonable cause to believe" such is occurring are physicians, osteopathic physicians, nurses, teachers, school personnel, social workers, coroners, medical examiners, child-caring personnel, residents, interns, chiropractors, dentists, optometrists, emergency medical technicians, paramedics, health professionals, mental health professionals, and police officers. Clearly, this statute is designed to protect a child not so much from outside forces, as from abuse or neglect perpetrated, as here, by someone within the child's own family environment. If this statute is the source of a legal duty sufficient to support accomplice liability for failure to report known or suspected child abuse, then any doctor, teacher, social worker, etc., who is found to have "known or had reasonable cause to believe" that a child was being abused by his parents and to have failed to report that knowledge or belief would be subject to indictment and conviction as an accomplice to that abuse. I do not believe the legislature intended that result when it enacted the reporting statute.

Rather, the unique legal duty which a parent has to protect his child from harm arises from the "special relationship" which exists between any custodian and the person in his custody. In the context of civil liability, we have recognized that when a person is in the custody of the state a "special relationship" exists which gives rise to a legal duty of the state to protect that person from harm inflicted by another. Cf. *Fryman v. Harrison,* Ky., 896 S.W.2d 908 (1995); *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992). Although neither *Fryman* nor *Ashby* involved a child abuse situation, the "special relationship" concept recognized in those cases was derived from *DeShaney v. Winnebago County DSS,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). *See Ashby, supra,* at 190. In *DeShaney,* a civil rights claim brought under 42 U.S.C. § 1983, the Wisconsin Department for Social Services was sued for its failure to remove an infant plaintiff from the custody of his abusive father. Despite the fact that the state had received numerous reports of abuse by the father, it was held that a "special relationship" did not exist between the infant and the state.

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. (Citations omitted.)

*Id.,* 489 U.S. at 200, 109 S.Ct. at 1005–06. *Compare Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), in which the Court held that a state had an affirmative duty to protect a person who was involuntarily institutionalized. "When a person is institutionalized—and wholly dependent on the State—[,] ... a duty to provide certain services and care does exist...." *Id.,* 457 U.S.

at 317, 102 S.Ct. at 2459. More to the point, it has been held by several federal courts of appeals that a state may be liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents. See *Doe v. New York City Dept. of Social Services,* 649 F.2d 134, 141–42 (2nd Cir.1981), *after remand,* 709 F.2d 782, *cert. denied sub nom., Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Taylor ex rel. Walker v. Ledbetter,* 818 F.2d 791, 794–97 (11th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

The existence of this "special relationship" between a state and a person in its custody from which arises a duty to protect from harm also has been recognized by a number of state courts. *E.g., Sanders v. City of Belle Glade,* Fla.App., 510 So.2d 962 (1987) (civil liability may be imposed upon the state for failure to protect an individual taken into custody from assaults by third parties); *Jean v. Commonwealth,* 414 Mass. 496, 610 N.E.2d 305 (1993) (special relationship found to exist between probation officer and victim of probationer, where probationer violated a requirement of his probation that he refrain from teaching young boys and probation officer was obliged to see that probationer complied with the terms of his probation). Note that in neither of these cases was the perpetrator a "state actor," which would be required to sustain a civil rights action under 42 U.S.C. § 1983, *e.g., DeShaney v. Winnebago County DSS, supra.*

A legal duty to protect predicated upon a "special relationship" is not confined to governmental entities, but also has been found to exist in relationships between private individuals. In *Reed v. Hercules Construction Co.,* Mo.App., 693 S.W.2d 280 (1985), it was held that a special relationship sufficient to trigger a duty to protect against the intentional criminal conduct of a third party exists when one entrusts himself to the protection of another and reasonably relies on the other to provide a place of safety, *i.e.,* innkeeper-guest relationship, common carrier-passen-

ger, school-student. *Id.* at 282. This duty was otherwise described in *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 434, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976) as follows:

> whenever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct . . . he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger (*quoting from Heaven v. Pender,* 11 Q.B.D. 503, 509 (1883)).

These cases hold that the existence of a "special relationship" can subject a person to civil liability for failure to protect another from harm. The issue then becomes whether the violation of that duty will support a criminal conviction in the absence of explicit statutory language creating such a duty. In their treatise on criminal law, LaFave and Scott note the general rule that "one has no legal duty to aid another person in peril, even when that aid can be rendered without danger or inconvenience to himself." 1 W. LaFave and A. Scott, *Substantive Criminal Law* § 3.3, at 284–85 (1986). However, they also recognize an exception creating a duty based upon relationships.

> The common law imposes affirmative duties upon persons standing in certain personal relationships to other persons— *upon parents to aid small children,* upon husbands to aid their wives, upon ship captains to aid their crews, upon masters to aid their servants. Thus a parent may be guilty of criminal homicide for failure to call a doctor for his sick child, *a mother for failure to prevent the fatal beating of her baby by her lover,* a husband for failure to aid his imperiled wife, a ship captain for failure to pick up a seaman or passenger fallen overboard, and an employer for failure to aid his endangered employee. Action may be required to thwart the . . . threatened acts by third persons.

*Id.* (Emphasis added.) The existence of a "special relationship" giving rise to a legal

duty to protect is recognized by a growing number of state courts as the basis for imposing criminal liability upon a custodial parent for failing to protect his child from physical abuse at the hands of the parent's domestic companion.

*Palmer v. State*, 223 Md. 341, 164 A.2d 467 (1960) was the first case to directly impose a duty upon a parent to prevent such abuse of her child. There was no evidence that the mother had ever personally inflicted injury upon the child. The mother's conviction of involuntary manslaughter was upheld on the basis of her "gross, or criminal, negligence in permitting her paramour to inflict, upon her twenty months' old child, prolonged and brutal beatings that finally resulted in the child's death...." *Id.* at 468. The court premised the mother's duty primarily upon Maryland's nurturing statute, which charges parents with the "support, care, nurture, welfare and education" of their children. Art. 72 A, § 1 (1957 code). *Compare* KRS 405.020(1).

In *State v. Walden*, 306 N.C. 466, 293 S.E.2d 780 (1982), a mother was convicted of aiding and abetting assault solely on the basis that she was present when her child was assaulted, but failed to take reasonable steps to prevent the assault. The court addressed the issue of duty as follows:

> Where the common law has imposed affirmative duties upon persons standing in certain personal relationships to others, such as the duty of parents to care for their small children, one may be guilty of criminal conduct by failure to act or, stated otherwise, by act or omission....
>
> Parents in this State have an affirmative legal duty to protect and provide for their minor children. Although our research has revealed no controlling case in this jurisdiction on the question of a parent's criminal liability for failure to act to save his or her child from harm, the trend of Anglo–American law has been toward enlarging the scope of criminal liability for failure to act in those situations in which the common law or statutes impose a responsibility for the safety and well-being of others.

\*   \*   \*   \*   \*   \*

> [W]e believe that to require a parent as a matter of law to take affirmative action to prevent harm to his or her child or be held criminally liable imposes a reasonable duty upon the parent. Further, we believe this duty is and has always been inherent in the duty of parents to provide for the safety and welfare of their children, which duty has long been recognized by the common law and by statute. This is not to say that parents have the legal duty to place themselves in danger of death or great bodily harm in coming to the aid of their children. To require such, would require every parent to exhibit courage and heroism which, although commendable in the extreme, cannot realistically be expected or required of all people. But parents do have the duty to take every step reasonably possible under the circumstances of a given situation to prevent harm to their children. (Citations omitted.)

306 N.C. at 472–73, 293 S.E.2d at 785–86. In *Walden*, the mother argued that, if anything, she should have been convicted under a statute proscribing child abuse, since that statute specifically included language creating an affirmative duty to protect. *Compare* KRS 508.100, *et seq.* In rejecting this argument, the court noted that each element of the offense of assault had been satisfied, notwithstanding the fact that the elements of another criminal statute might also be satisfied.

In *Michael v. State*, 767 P.2d 193 (Alaska App.1988), *reversed on other grounds, Michael v. State*, 805 P.2d 371 (Alaska 1991), a father's conviction of second-degree assault for failing to prevent his wife from injuring their young daughter was affirmed on the basis that both the common law and Alaska's statutes established a clear duty upon a parent to protect his child. The statutes in which the court found that duty included Alaska's version of the nurturing statute and a statute defining the criminal offense of endangering the welfare of a minor. *Compare* KRS 405.020(1) and KRS 530.060. Although the conviction was reversed on further appeal because of a defect in the indictment, the Supreme Court of Alaska reaf-

firmed the central holding that a custodial parent can be criminally liable for the violation of his duty to protect his child from harm.

In *P.S. v. State*, 565 So.2d 1209 (Ala.Cr. App.1990), a mother was convicted of willful maltreatment of her infant child for her failure to protect him from being abused by her live-in boyfriend. The mother conceded that she had a legal duty to protect her child, but argued that the duty did not arise until she had sufficient knowledge that the abuse was occurring. The court agreed that knowledge was an element of the offense, but held that sufficient evidence was presented to support a finding that the mother did know of the abuse.

In *People v. Peters*, 224 Ill.App.3d 180, 166 Ill.Dec. 511, 586 N.E.2d 469 (1991), a mother's conviction of complicity to murder and aggravated battery of her child was affirmed even though she was not present at the time the child was murdered by her boyfriend and did not perform any act specifically intending to facilitate the child's murder. The court looked to the common law for the mother's legal duty to protect her child.

> Generally, a person will not face criminal liability for failing to aid another. However, the common law has carved out an exception in the case of a parent-child relationship. Custodial parents have an affirmative duty to protect and provide for their minor children. A parent who knowingly fails to protect its child from abuse may be prosecuted under the accountability [complicity] statute and, thereby, becomes legally accountable for the conduct of the abuser. (Citations omitted.)

224 Ill.App.3d at 190, 166 Ill.Dec. at 518, 586 N.E.2d at 476. Illinois' complicity statute requires that the person charged must have intended to promote or facilitate the offense. Ill.Rev.Stat.1985, Ch. 38, par. 5–2(c). *Compare* KRS 502.020(1). This element was held satisfied despite the fact that the mother was not present when the offense was committed.

Intent may be gleaned from knowledge. A person who knows that his or her child is in a dangerous situation and fails to take action to protect the child, presumably intends the consequences of the inaction. In the context of the instant case, the defendant intended to facilitate the offense.

> ... Upon becoming aware of the abuse to Bobby, the defendant, as his mother, had a duty to protect her son from further abuse. By knowingly failing to remove Bobby from an abusive and dangerous environment, the defendant, aware of the consequences of her inaction, facilitated further harm to Bobby. The defendant aided [the perpetrator], who continued to abuse and, ultimately murder her son by failing to protect him during the many occasions when it was reasonably possible for her to do so.

224 Ill.App.3d at 190–91, 166 Ill.Dec. at 518, 586 N.E.2d at 476.

*See also People v. Peabody*, 46 Cal.App.3d 43, 119 Cal.Rptr. 780 (1975); *State v. Adams*, 89 N.M. 737, 557 P.2d 586 (1976); *People v. Kibbe*, 35 N.Y.2d 407, 321 N.E.2d 773, 362 N.Y.S.2d 848 (1974); *Commonwealth v. Howard*, 265 Pa.Super. 535, 402 A.2d 674 (1979).

Although in *Knox v. Commonwealth, supra*, we rejected the notion that a parent has a legal duty under the common law to protect his child from bodily harm, no conceptual distinction is perceived between imposing a legal duty upon the state to protect a person in its custody from harm, *c.f. Fryman v. Harrison, supra, Ashby v. City of Louisville, supra*, and imposing the same legal duty upon a custodial parent to protect a child in his custody from harm inflicted by a person whom the parent has invited into the custodial environment. Thus, the existence of a parent's legal duty to protect his child can be found in the common law concept of the "special relationship" which exists between a custodian and the person in his custody, a concept recognized in Kentucky, but only subsequent to our decision in *Knox v. Commonwealth, supra*.

However, the existence of a "special relationship" giving rise to a custodial parent's

duty to protect his child from harm is also found in the statutory law of this Commonwealth. Like Maryland, Alaska and most other jurisdictions, we, too, have a statute which charges parents with the "joint custody, nurture and education of their children." "Nurture" means *inter alia* "to care for," *The Merriam–Webster Dictionary* (G. & C. Merriam Co. 1974), and it requires no leap in logic to equate care with protection. Legislative recognition that a "special relationship" exists between parent and child is also found in those penal statutes which criminalize certain conduct of parents directed toward their children. For example, KRS 530.040, *Abandonment of a Minor*, makes it a Class D felony for a parent, guardian or other person legally charged with the care or custody of a minor to desert that minor in any place under circumstances endangering his life or health and with the intent to abandon him. Under KRS 530.060, *Endangering the Welfare of Minor*, it is a Class A misdemeanor for a parent, guardian or other person legally charged with the care or custody of a minor to fail or refuse to exercise reasonable diligence to prevent him from becoming a neglected, dependent or delinquent child. And KRS 508.100, *et seq.*, which defines the offense of *Criminal Abuse*, levies criminal penalties against a parent having custody of a child who permits that child to be abused by another. In *Knox v. Commonwealth, supra,* at 712, we took note of the existence of the criminal abuse statutes, but could not consider their impact on KRS 502.020 in that case, because they did not become effective until after the date of the offense.

I agree that KRS 502.020 is not a vehicle to be employed as a pretext for the mere purpose of increasing the penalties for offenses described in other penal statutes. Reference is made to KRS 530.040, KRS 530.060 and KRS 508.100, *et seq.*, only to prove that our legislature has recognized the existence of the "special relationship" between a custodial parent and his child from which arises a legal duty to protect that child from harm. The existence of this "special relationship" satisfies the legal duty element of KRS 502.020(1)(c) and KRS 502.020(2)(c).

Unlike the Illinois Court of Appeals, we need not decide whether a parent who leaves his child alone with one whom he knows has abused the child in the past intends to promote or facilitate the further abuse of the child, although we have held that intent can be inferred from conduct. *E.g., Tungate v. Commonwealth,* Ky., 901 S.W.2d 41 (1995); *see also Lambert v. Commonwealth,* Ky.App., 835 S.W.2d 299, 301 (1992). The type of complicity involved in this case is not complicity as to the criminal act, KRS 502.020(1), *i.e.,* the assault of the child, but complicity as to the criminal result, KRS 502.020(2), *i.e.,* the injury suffered by the child as a result of the assault. The significance of this difference is that intent need not be proven to obtain a conviction under KRS 502.020(2). It is sufficient that Appellant failed to perceive a substantial and unjustifiable risk that the child would be injured if left alone with Tubbs, *i.e.,* recklessness, KRS 501.020(4), or that she was aware of and consciously disregarded a substantial and unjustifiable risk that the child would be injured if left alone with Tubbs, *i.e.,* wantonness, KRS 501.020(3). *See* 1974 Commentary to KRS 502.020. The definitions of wantonness and recklessness both require some degree of knowledge on the part of the accused, which the Alabama Court of Criminal Appeals held in *P.S. v. State, supra,* to be an essential element of the offense. Also, under either section of KRS 502.020, the parent is required to make only a proper (read "reasonable") effort to protect his child from harm. Thus, as recognized by the Supreme Court of North Carolina in *State v. Walden, supra,* courage and heroism are not required, but only an effort which is deemed reasonable under the circumstances.

To summarize, I would overrule *Knox, supra,* not by interpreting the reporting statutes, KRS 620.010 and KRS 620.030, as creating a new source of criminal liability, but because both the common law and our nurturing and penal statutes recognize that a custodial parent has a "special relationship" with his child from which arises a legal duty

to protect that child from being assaulted by another. To the extent that a parent acts wantonly or recklessly with respect to a risk that harm will occur to the child and fails to make a reasonable effort to prevent it, he is guilty of complicity under KRS 502.020(2). If the parent is actually present when the assault occurs and fails to make a reasonable effort to prevent it, actual intent to promote or facilitate the offense may be inferred from his failure to act and he can be convicted of complicity under KRS 502.020(1).

JOHNSTONE, J., joins this concurring opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. This Court has now done what it refused to do in *Knox v. Commonwealth*, Ky., 735 S.W.2d 711 (1987); that is, the Court has twisted the words of the legislature and reshaped them into a form to its liking, in order to impose a legal duty that did not previously exist. At the time of *Knox*, we held that KRS 199.335, the predecessor to KRS 620.030, did not establish a legal duty to prevent the abuse of one's child so as to confer criminal liability on that act. The new enactment, when considered with KRS 620.010, is used as the basis for finding this legal duty in order to convict Appellant of complicity to commit first-degree assault of her child.

In taking this step, the Court has utilized two different rationales, which conflict and will undoubtedly create uncertainty in the prosecution of cases of this type. The simplest method to resolve this appeal is to say that the Commonwealth erred in prosecuting this as a complicity case. This should have been a charge of criminal abuse in the first degree, a violation of KRS 508.100. It would appear that the only reason for not using criminal abuse as the vehicle for prosecution was dissatisfaction with the penalty imposed for a conviction of that charge. Otherwise, the elements of criminal abuse in the first degree are precisely the same as those for complicity to commit assault, assuming the requisite legal duty could be imposed.

The Commonwealth argued that the legal duty which Appellant violated is created by the enactment of KRS 508.100–.120, the sections enacted by the legislature in 1982, which were not addressed by this court in *Knox* because they were not the law at the time the crimes prosecuted therein were committed. The plurality opinion by Justice Wintersheimer takes the combination of the duty of KRS Chapter 508 and the general duty toward children set forth in KRS 620.010 to find the legal duty upon which to base criminal responsibility. The duty imposed by KRS 620.030 is the duty to report dependency, neglect, or abuse and is imposed on "[a]ny person, including but not limited to a physician, osteopathic physician, nurse, teacher, school personnel, social worker, coroner, medical examiner, child-caring personnel, resident, intern, chiropractor, dentist, optometrist, emergency medical technician, paramedic, health professional, mental health professional, peace officer or any organization or agency for any of the above...." KRS 620.030(2). The duty is simply one of reporting, not preventing, as was the duty rejected as a basis for imposing criminal responsibility on the defendant in *Knox, supra.* To expand that duty is to place in jeopardy of possible criminal prosecution of complicity to murder, or other criminal sanction, any of those named in the statute. The concurring opinion notes this possibility and the unlikelihood of this being the legislature's intent in passing KRS 620.010.

Justice Cooper's concurrence then attempts to ground the duty on the "special relationship" concept recognized by the Kentucky courts in *Fryman v. Harrison*, Ky., 896 S.W.2d 908 (1995), and *Ashby v. City of Louisville*, Ky.App., 841 S.W.2d 184 (1992). This is a huge stretch of narrow rulings that were limited to the foreseeable injury to a person by a person under the control of the state. Further, neither of the cases involved the private parent-child relationship, nor did they involve child abuse. The federal case relied upon, *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), concerned

a federal civil rights claim against a social agency for the failure of that agency to act upon gaining knowledge that the child was in the custody of an abusive father. The leap from the imposition of civil liability on the state for failure to prevent a foreseeable injury by one under its custody or control to criminal sanction for the failure to prevent a foreseeable injury by one under its custody or control to criminal sanction for the failure to perform a legal duty that must be deduced from the interpretation of three civil cases is one I will not make. It is the job of the Kentucky legislature to set forth and define legal duty, not this Court's.

With these opinions, we are putting the overburdened educators and medical personnel who have daily contact with our children at risk of criminal charges arising from things that perhaps should have been noticed, but in the course of hectic schedules, were not. The actions of this defendant were morally reprehensible and repugnant to any responsible, empathetic person, but it is the legislature that defines what behavior constitutes criminal conduct and sets forth the mechanism of punishment, not the judiciary. Here, we are, in effect, legislating when we should be adjudicating.

STEPHENS, C.J., joins this dissenting opinion.