JOHNSON, JUDGE:
Marissa Kaylene Dunn ("Dunn"), brings this appeal of an order of the Powell Circuit Court, Family Division, granting Ryan Chase Thacker's ("Thacker") petition for a Domestic Violence Order ("DVO") against her on behalf of their minor child. After reviewing the record in conjunction with the applicable legal authorities, we AFFIRM the Powell Circuit Court.
BACKGROUND
Thacker is the father and Dunn is the mother of the parties' minor child ("Child"). This matter involves Thacker alleging domestic violence by Dunn's boyfriend ("Boyfriend"), who allegedly cohabitates with Dunn and Child. On December 12, 2016, the court conducted a hearing on the DVO petition filed by Thacker against Dunn on behalf of Child, who lived in Dunn's residence.
In his Petition for Order of Protection, Thacker expressed concern for the well-being of his daughter because of the alleged abusive behavior toward Child by Boyfriend. Thacker quotes from text messages sent to him by Dunn detailing the alleged abusive behavior by Boyfriend. Those text messages state, in part, "[Boyfriend] treats [Child] horrible, he spanks her way too hard, [Boyfriend] jerks [Child] up by her arms so hard [Dunn] is afraid he will pop her shoulders out of socket." During the hearing, Thacker read these texts to the court and showed them on his phone to the court. Dunn did not dispute that she expressed these sentiments to Thacker, but instead contended that she had alleged abuse by Boyfriend to Thacker in an attempt to force a reconciliation between herself and Thacker.
The court was apparently unswayed by Dunn's explanation and granted Thacker's petition for a DVO against Dunn, stating "[Dunn] knew or should have known or allowed or permitted [Boyfriend] to be a threat of physical injury to [Child] as evidenced by the texts she sent to [Thacker]." While being questioned by Thacker, Dunn admitted that she planned to marry Boyfriend. The court ordered Dunn to remain 500 feet away from Thacker, Thacker's residence, and Child except for periods of *578 supervised visitation to be overseen by Dunn's grandparents. The court also awarded temporary custody of Child to Thacker, pursuant to Kentucky Revised Statutes ("KRS") 403.270, 403.320, 403.822, the Uniform Child Custody Jurisdiction and Enforcement Act, and 28 U.S.C.A. Section 1738A. Finally, the court referred the matter to the Kentucky Cabinet for Health and Family Services for investigation.
Dunn contends in her appeal that since the DVO petition and order were against her and not Boyfriend, who committed the alleged domestic violence against Child, the DVO cannot stand. She states, "The filing of this petition does not name a proper defendant leading to an absence of substantial evidence as to this respondent." Dunn argues that if the DVO is valid on those grounds, then it should be dismissed because of insufficient evidence against her.
STANDARD OF REVIEW
The standard of review for Dunn's first contention, that the DVO petition cannot stand because she is improperly named as the individual responsible for the abuse, is reviewed de novo as it is a question of law. Karem v. Bryant , 370 S.W.3d 867, 869 (Ky. 2012).
As to Dunn's second contention, the standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. Kentucky Rules of Civil Procedure ("CR") 52.01 ; Reichle v. Reichle , 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. Moore v. Asente , 110 S.W.3d 336, 354 (Ky. 2003). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." Cherry v. Cherry , 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. Kuprion v. Fitzgerald , 888 S.W.2d 679, 684 (Ky. 1994) (citations omitted).
ANALYSIS
Dunn asserts that Thacker's petition must fail due to improperly naming her instead of Boyfriend, leading to an absence of substantial evidence against her. We disagree. Dunn's very inaction in the face of harm inflicted on her child-or upon any child under her care-is tantamount to abuse. KRS 620.010 states, "Children have certain fundamental rights which must be protected and preserved, including ... the right to be free from physical ... injury ... and the right to a secure, stable family."
In Lane v. Commonwealth , 956 S.W.2d 874 (Ky. 1997), the Kentucky Supreme Court established a new interpretation of parental responsibility and accountability for children. Prior to Lane , Knox v. Commonwealth , 735 S.W.2d 711 (Ky. 1987), had been the law, holding that a mother had no duty to prevent the rape of her daughter by her husband and thus that the mother could not be convicted of complicity in the crime itself. In his powerful and persuasive dissent in Knox , Justice Wintersheimer traced the evolution of the pertinent statutes and reasoned as follows:
KRS 199.335 has been repealed by 1986 c 423, § 198, eff. July 1, 1987. The new section on dependency, neglect and abuse provides in the legislative purpose of Chapter 620, as set out in KRS 620.101, in part, that children have certain fundamental rights which must be protected to be free from sexual and physical injury or exploitation. It is absolutely illogical to legislate a duty to report and prevent child abuse for many *579 other named professions who are in "loco parentis" and hold in this opinion that the parent has no duty whatsoever to prevent abuse. It defies common sense.
Id. at 713.
Ten years later, the Kentucky Supreme Court reversed Knox in Lane and adopted the holding urged by Justice Wintersheimer. Lane involved the issue of whether a mother could be convicted of complicity to commit assault for failing to intervene to protect her two-year old daughter from a vicious assault perpetrated by her "domestic companion." The court reiterated an analysis of the evolution of the pertinent statutes and issued a new holding that comported with the legislative intent to create a duty on the part of a parent to protect a child from injury:
KRS 620.010 specifically states that children have a fundamental right to be free from physical injury as well as other type of injury. KRS 620.030 establishes an affirmative duty to report dependency, neglect or abuse. KRS 620.010 is a statement of the legislative purpose on which the chapter is based. It should be noted that Chapter 620 replaced KRS 199.335(2) and the other sections of that law in 1986. Knox , supra , was decided on the basis of the law in existence at the time of the offense which was KRS 199.335(2).
...
In view of the expressed statement of legislative intent of Chapter 620, we hold that KRS 620.010 creates an affirmative duty which would result in an assault on that child. This duty was clearly violated by Lane pursuant to the evidence presented at trial.
...
To the degree that Knox v. Commonwealth conflicts with this decision, Knox is overruled. It is the holding of this Court that Chapter 620 of the Kentucky Revised Statutes has created an affirmative duty to prevent physical injury to children. Prosecution for such conduct can fall either under the assault provisions of the statute or under the abuse provisions of the statute.
Lane at 875-876.
In addition to parents or those acting in loco parentis , the public at large has a statutory duty to report any suspected incident of abuse pursuant to KRS 620.050(1). That statute provides immunity from prosecution to one making such a report, but by the same token, the failure to make a report by one having such knowledge exposes him/her to liability for both a lawsuit and for criminal prosecution. In the recent case of A.A. By and Through Lewis v. Shutts , 516 S.W.3d 343 (Ky. App. 2017), a mother sued a treating physician for failure to report abuse of a child who was later murdered by the foster father who had previously inflicted injuries on the child. Entry of summary judgment in favor of the physician was reversed and the case proceeded to trial.
KRS 620.030(1) mandates "any person" who reasonably suspects dependency, neglect, or abuse to report that suspicion to the authorities under penalty of a Class B misdemeanor for the first offense per KRS 620.030(6)(a). KRS 620.030(2) expands the list from "any person" in general to a virtual litany-encyclopedic in scope-of possible parties likely to acquire such guilty knowledge or suspicion:
(2) Any person, including but not limited to a physician, osteopathic physician, nurse, teacher, school personnel, social worker, coroner, medical examiner, child-caring personnel, resident, intern, chiropractor, dentist, optometrist, emergency medical technician, paramedic, health professional, mental health professional, peace officer, or any organization or agency for any of the above, who *580 knows or has reasonable cause to believe that a child is dependent, neglected, or abused, regardless of whether the person believed to have caused the dependency, neglect, or abuse is a parent, guardian, person exercising custodial control or supervision, or another person, or who has attended such child as a part of his or her professional duties shall, if requested, in addition to the report required in subsection (1) or (3) of this section, file with the local law enforcement agency or the Department of Kentucky State Police or the Commonwealth's or county attorney, the cabinet or its designated representative within forty-eight (48) hours of the original report a written report containing:
(a) The names and addresses of the child and his or her parents or other persons exercising custodial control or supervision;
(b) The child's age;
(c) The nature and extent of the child's alleged dependency, neglect, or abuse, including any previous charges of dependency, neglect, or abuse, to this child or his or her siblings;
(d) The name and address of the person allegedly responsible for the abuse or neglect; and
(e) Any other information that the person making the report believes may be helpful in the furtherance of the purpose of this action.
Criminal sanctions for non-compliance follow.
In the case before us, we are persuaded that the DVO was properly entered as to Dunn-even though she may not have been the individual directly responsible for the abuse. She was aware of the abuse, and under the statutory law and case law that we have reviewed, we believe that this is a wholly appropriate case in which to expand the scope of the protection of our domestic violence statutes. The trial court exercised sound discretion in its entry of a DVO against Dunn.
Having found that the trial court was within its discretion to grant a DVO against Dunn based on the actions of Boyfriend, we next turn to her second argument against the granting of the DVO, that it should be dismissed because of insufficient evidence. This argument also fails. Prior to entry of a DVO, the court must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur ..." KRS 403.740(1). The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. Baird v. Baird , 234 S.W.3d 385, 387 (Ky. App. 2007). The definition of domestic violence and abuse, per KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple."
In its finding, the court stated, "[Dunn] knew or should have known or allowed or permitted [Boyfriend] to be a threat of physical injury to [Child] as evidenced by the texts she sent to [Thacker]." The court saw Dunn's texts to Thacker wherein she directly implicated Boyfriend in physically abusing Child and determined the aforementioned preponderance of evidence threshold had been met in regard to physical abuse. Therefore, there was evidence that established that Child was more likely than not a victim of domestic violence.
In our view, the court's finding of domestic violence was not "clearly erroneous." The only evidence to the contrary of a finding of domestic violence is Dunn's own testimony that she had previously lied in her text messages detailing the alleged abuse by Boyfriend to Thacker. When *581 someone appears before a court and admits to lying while insisting that she is now telling the truth with zero corroborating evidence, a court would be rightfully suspicious of such testimony. The trial court did not abuse its discretion in this matter. Its decision was neither unreasonable, unfair, arbitrary or capricious.
CONCLUSION
Based upon the foregoing, the Powell Circuit Court's Domestic Violence Order is AFFIRMED.
ALL CONCUR.