RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0500-ME

MICHAEL RUPARD                                                                                   APPELLANT

v.                          APPEAL FROM JESSAMINE FAMILY COURT
                            HONORABLE JEFF C. MOSS, JUDGE
                            ACTION NO. 22-D-00012-001

EMILY WHEELER                                                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND TAYLOR, JUDGES.

DIXON, JUDGE:  Michael Rupard appeals an order of the Jessamine Family

Court, granting Emily Wheeler's petition for an interpersonal protection order

(IPO) and restricting him from being within 500 feet of her residence.  After

careful review of the record, briefs, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 20, 2022, Wheeler filed a petition for an IPO and requested a temporary order of protection that, among other things, would restrict Rupard from being within 500 feet of her residence. The court granted the temporary order; however, since Rupard's residence was situated within the proscribed area, on February 2, 2022, the restriction was reduced to 300 feet pending the final hearing. Rupard then moved to dismiss, arguing Wheeler did not have standing and the court did not have subject matter jurisdiction. The motion was denied.

The final hearing occurred on March 30, 2022. Wheeler testified that on January 19, 2022, Rupard, who was a friend, arrived at her residence intoxicated. Rupard informed Wheeler he had ruined his marriage and had been unfaithful to his wife. Wheeler inquired with whom, and Rupard named Wheeler; Wheeler told Rupard that would not happen. Rupard then forced his hand between her legs touching Wheeler's genital area through her clothes. Wheeler's eight-year-old daughter was present at the time, though Wheeler's lap was shielded by a pillow.

In response, Wheeler jumped up from where she had been sitting with Rupard, relocated to a seat further removed, repeatedly sent her daughter out of the room in an effort to shield her from the events and, via text, attempted to enlist the

aid of friends. During these events, Wheeler observed that Rupard was aroused as she could see a bulge in his lap which he covered with a blanket. Rupard pursued Wheeler, rubbed his leg up and down her leg, intentionally pushed against her breasts with his hand while attempting to take Wheeler's phone from her, and grabbed her wrist in an attempt to pull her down onto the couch. Rupard did not cross-examine Wheeler. Wheeler's husband then testified that, upon hearing of the event the following day, he confronted Rupard who apologized repeatedly.

After the close of Wheeler's evidence, Rupard argued there was insufficient proof of a sexual assault and renewed his motion to dismiss. Treating the motion as one for a directed verdict, the court denied it. Rupard subsequently declined to present any proof, and the court entered the IPO and reinstated the 500-foot restriction for Wheeler's residence. On April 5, 2022, the court entered its findings of fact and conclusions of law in support of the IPO.

Thereafter, Rupard moved to alter, amend, or vacate the IPO arguing the court erred by reinstating the 500-foot restriction and failing to conduct a hearing on the specific issue. On May 3, 2022, after conducting the requested hearing, the court made additional findings of fact and conclusions of law and denied the motion to amend. This appeal followed. Additional facts will be introduced as they become relevant.

## STANDARD OF REVIEW

Pursuant to KRS[1] 456.060(1), following a hearing, a court may issue an IPO if it finds "by a preponderance of the evidence that dating violence and abuse, sexual assault, or stalking has occurred and may again occur[.]" "The preponderance of the evidence standard is met when 'sufficient evidence establishes the alleged victim was more likely than not to have been a victim' of dating violence and abuse, sexual assault, or stalking." *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (quoting *Dunn v. Thacker*, 546 S.W.3d 576, 580 (Ky. App. 2018)).

We review the court's factual determinations under the clearly erroneous standard. CR[2] 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is evidence that "has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks omitted). "The test is not whether this Court would have decided a case differently but whether the family court's decision was 'unreasonable, unfair, arbitrary or capricious.'" *Jones*,

---

[1]  Kentucky Revised Statutes.

[2]  Kentucky Rules of Civil Procedure.

617 S.W.3d at 423 (quoting *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010)).

## ANALYSIS

Rupard first challenges the court's denial of his motion to dismiss.[3] Essentially, Rupard claims that because Wheeler's petition did not state with particularity the elements of sexual abuse – intentional sexual contact for the purpose of his sexual gratification – it was insufficient to merit a hearing and should have been dismissed pursuant to KRS 456.040. We disagree.

KRS 456.040(1)(a) states that upon the filing of a petition for an IPO, the court shall review it and "[i]f the review indicates that [dating violence and abuse, stalking, or sexual assault] does not exist, the court may consider an amended petition or dismiss the petition without prejudice." While this statute undoubtedly grants the court the authority to *sua sponte* curtail proceedings when the petition is devoid of facts supporting the existence of one of the three qualifying events for an IPO, we do not interpret it as imposing a harsher burden upon petitioners than Kentucky's well-established notice pleading standard. Indeed, to require a stricter pleading requirement for an IPO would obstruct the

---

[3] Rupard erroneously characterizes this as an issue of subject matter jurisdiction; however, as there is no dispute the court has the authority to decide IPO matters, subject matter jurisdiction is not in dispute. *See Daugherty v. Telek*, 366 S.W.3d 463, 467 (Ky. 2012), "a court has subject matter jurisdiction of the case so long as the pleadings reveal that it is the kind of case assigned to that court by a statute or constitutional provision."

legislative purpose of "[a]llow[ing] victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]" KRS 456.020(1)(a). Under the notice pleading standard, a party need not state a claim with technical precision, but merely provide fair notice and identify their claim. *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 240-41 (Ky. 2020). Bearing this standard in mind, we turn to the issue of whether Wheeler's petition was sufficient.

Sexual assault "refers to conduct prohibited as any degree of rape, sodomy, or sexual abuse under KRS Chapter 510 or a criminal attempt, conspiracy, facilitation, or solicitation to commit any degree of rape, sodomy, or sexual abuse[.]" KRS 456.010(7). Applicable herein, "[a] person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent." KRS 510.130. Sexual contact "means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]" KRS 510.010(7).

In her petition, Wheeler recounted that after Rupard commented about cheating on his wife with her, he "forced [his hand] between my legs[,]" rubbed his foot "up and down my leg[,]" . . . "push[ed] up against my breasts with his hand, intentionally[,]" and "grabbed my hand and the back of my shirt to try to pull me down on the couch." Having alleged that Rupard stated his interest in a sexual

relationship with her, and then shortly thereafter purposefully touched near or on intimate areas of her body, we have no difficultly concluding Wheeler met her burden under the notice pleading standard.

Next, Rupard contends the court committed reversible error and significantly constrained his liberty when it found sufficient grounds existed to impose a 500-foot restriction for Wheeler's residence.[4]

Upon issuing an IPO, the court may restrain a respondent from "[g]oing to or within a specified distance of a specifically described residence, school, or place of employment or area where such a place is located[.]" KRS 456.060(1)(a)4. The court shall "[o]nly impose a location restriction where there is a specific, demonstrable danger to the petitioner or other person protected by the order[.]" KRS 456.060(2)(b).

Rupard argues there was no evidence from which the court could find that a danger existed justifying a 500-foot restriction when Wheeler admitted she did not witness Rupard violating the temporary order of only a 300-foot restriction. We reject Rupard's contention that the absence of a violation during the few months the action was pending precludes a finding of demonstrable danger. The fact that the temporary order was effective in preventing additional acts of sexual

---

[4] Rupard raises no objection to the other restrictions imposed by the IPO, including that he stay 500 feet away from Wheeler.

-7-

assault is not a reason to require the court to remove the protection; rather, it is merely a factor for the court to consider. *See Kingrey v. Whitlow*, 150 S.W.3d 67, 70 (Ky. App. 2004), wherein the Court discussed the extension of domestic violence orders when no additional acts have occurred.

Furthermore, we disagree that the evidence did not support the court's finding of a demonstrable danger. Rupard admitted he is an alcoholic and that he acted inappropriately by consuming alcohol and going to Wheeler's house on January 19, 2022. Though Rupard entered rehabilitation and has been sober since approximately two days after the assault, his relatively short period of sobriety, coupled with the fact Wheeler resides a paltry 300 feet from him – a distance he easily traversed while intoxicated the night of the assault – creates a danger that his actions of January 19, 2022, will be repeated. Additionally, Rupard engaged in the conduct underlying the IPO despite Wheeler's expressed and implied rejection of his advances and in the presence of a witness, Wheeler's daughter, which evinces a disregard for the consequences. Considering these facts, we conclude that the court's finding of a demonstrable danger is not clearly erroneous.

Lastly, Rupard asserts the court failed to comply with KRS 456.060(2)(d), which instructs the court to "[c]onsider structuring a restriction so as to allow the respondent transit through an area if the respondent does not interrupt his or her travel to harass, harm, or attempt to harass or harm the

petitioner." We fail to see the relevance of this provision. Transit implies a brief, negligible contact with the protected area. Rupard does not argue he should be permitted to pass through the 500 feet surrounding Wheeler's residence, but rather he seeks to reside on a permanent basis within the protected area – unquestionably a significantly more intrusive proposition. As the cited statute provides no support for his position, we find no error.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders of the Jessamine Family Court are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John E. Reynolds
Nicholasville, Kentucky

BRIEF FOR APPELLEE:

Rachel D. Yavelak
Lexington, Kentucky