RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0683-ME

L.B.R., A MINOR CHILD                                     APPELLANT

                 APPEAL FROM PENDLETON CIRCUIT COURT
v.                  HONORABLE HEATHER FRYMAN, JUDGE
                 ACTION NO. 25-D-00007-001

A.R., A MINOR CHILD AND
MAKAYLA LYNN ROBBINS                             APPELLEES

OPINION
VACATING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE:  This appeal arises from the Pendleton Circuit Court's entry of an interpersonal protective order ("IPO") in favor of ten-year-old appellee, A.R., following a single incident in which her classmate, L.B.R., pointed a firearm at her and threatened to shoot while at school.  While this was an incredibly serious event and the gap in our law merits the attention of the legislature, this conduct

does not satisfy the current statutory requirements necessary to support a stalking-based IPO.  Thus, we are compelled to VACATE the Circuit Court's order.

## BACKGROUND

The incident underlying this appeal involved a single encounter between two ten-year-old students outside a school in or around a playground. These children had no prior relationship and only interacted due to being in the same class.  A.R. approached L.B.R. to ask a homework-related question while L.B.R. and a group of several other young boys[1] were talking on the school playground.  According to A.R.'s undisputed testimony, L.B.R. pulled up his shirt to reveal a handgun in his pocket.  She asked him if it was a real gun; he replied affirmatively before pulling it out, pointing it at her, and telling her he could shoot her.  A.R.'s mother, who had been watching the incident unfold from several hundred yards away, called for A.R. when she noticed a shift in the children's body language.[2]  A.R., mostly frozen in shock, did not move away from L.B.R. until her mother called for her a second time.  At that point, the children scattered.  After hearing A.R.'s story, her mother immediately called the police and then followed up with the school the following morning.  Following a hearing, the Pendleton

---

[1] The group consisted of L.B.R., two boys who were also in A.R.'s class, and two teenage boys whom A.R. did not recognize.

[2] In her testimony, A.R.'s mother stated that she did not see the gun—rather she saw L.B.R.'s hands pointed towards A.R. and A.R. standing unnaturally still with her hands raised in surrender.

Circuit Court granted A.R. an IPO against L.B.R. Per the terms of the IPO, L.B.R. cannot be within 500 feet of A.R. or within 500 feet of any Pendleton County school property for three years. However, the Pendleton Circuit Court acknowledged being in a bit of a quandary statutorily and openly questioned whether the IPO would hold up on appeal.

## STANDARD OF REVIEW

The review of a trial court's decision regarding a protective order is limited to "whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). A trial court's factual findings are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citations omitted). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). Issues of law are reviewed *de novo*. *Halloway v. Simmons*, 532 S.W.3d 158, 161 (Ky. App. 2017).

## ANALYSIS

We begin by noting that the Appellee chose not to file a brief in this appeal. Under RAP[3] 31(H)(3), this Court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if the appellant's brief reasonably appears to support such action; or (c) treat the appellee's failure as a confession of error and reverse without reaching the merits. *See Hawkins v. Jones*, 555 S.W.3d 459 (Ky. App. 2018). This Court is aware that L.B.R. has been the subject of criminal proceedings related to this incident and was subsequently removed from his home. These developments may have impacted the Appellee's decision not to file a brief – as an IPO against the child is somewhat meaningless if L.B.R. now lives in a different county or is barred from A.R.'s school. In any event, given the seriousness of the underlying conduct and the important question presented, we choose to accept the Appellant's statement of facts as correct and proceed to the merits.

Civil orders of protection are governed by KRS[4] Chapter 456, which establishes a mechanism for individuals to obtain short-term protection from wrongful conduct so that their lives may be as secure as possible. *See* KRS 456.020(1)(a). Although interpersonal protective orders are often sought in the

---

[3] Kentucky Rules of Appellate Procedure.

[4] Kentucky Revised Statutes.

context of dating violence, the statute expressly permits victims of stalking to obtain relief even when no prior dating relationship exists between the parties. KRS 456.030; *Taylor v. Fitzpatrick*, 659 S.W.3d 745, 748 (Ky. App. 2023).  KRS 456.010 sets out the definitions that apply to these proceedings and provides that "stalking" has the same meaning as the conduct described in KRS 508.140 (stalking in the first degree) and KRS 508.150 (stalking in the second degree).  We therefore turn to the statutory definition of stalking in Chapter 508, which states in relevant part:

> (1) (a) To "stalk" means to engage in an intentional course of conduct:
>
> > 1.  Directed at a specific person or persons;
> >
> > 2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and
> >
> > 3. Which serves no legitimate purpose.
>
> > (b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.
>
> (2) "Course of conduct" means a pattern of conduct composed of **two (2) or more acts**, evidencing a continuity of purpose. . . .

KRS 508.130 (emphasis added).  Thus, an individual seeking a protective order must prove by a preponderance of the evidence that:  (1) an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed,

intimidated, or harassed the victim; (2) the acts served no legitimate purpose; (3) the acts would have caused a reasonable person to suffer substantial mental distress; (4) and that these acts may occur again. *Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017). Further, "the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death." *Id.* (citing KRS 508.150).

Our analysis in this matter turns on whether the statute's required "two or more acts" can be established by multiple intimidating or harassing steps within one discrete incident. We hold that it cannot. Our precedents upholding IPOs consistently rely on separate stalking incidents to satisfy the "two or more acts" element. *See, e.g.*, *Allen v. Eder*, 682 S.W.3d 32-34 (Ky. App. 2023) (upholding an IPO where a rebuffed suitor followed a victim to her daughter's soccer game to watch her, then sent unwanted flowers, followed by harassing text messages). Even when there are repeated contacts between the parties, there must be two or more acts that are independently threatening to the victim. In *Strong v. Gary*, we upheld the denial of a stalking-based IPO where the first incident was a brick thrown through the petitioner's window but the second incident, a few days later, involved the respondent simply knocking on the victim's door. 673 S.W.3d 77, 80 (Ky. App. 2023).

-6-

Our precedent consistently finds that the required "pattern of conduct" for stalking in KRS 508.130 entails two or more temporally distinct acts that independently satisfy the elements of that statute. Thus, a single encounter cannot be segmented into discrete actions to satisfy the requirement. Along these lines, we find the analysis in *Smith v. Howell*, to be persuasive.[5] No. 2024-CA-0324-ME, 2024 WL 4469179 (Ky. App. Oct. 11, 2024). There, although Howell claimed to have received numerous threatening communications, only a single voicemail was introduced at the hearing.[6] *Id.* at *1. That voicemail contained two threats of violence against Howell. This Court vacated the IPO, concluding that multiple threats conveyed during one communication did not constitute two distinct acts. *Id.* at *4. Here, we review a similarly singular threatening incident. While one might argue that L.B.R. engaged in separate acts by first lifting his shirt to display the gun and then drawing the gun and threatening A.R., such conduct occurred during a single, continuous encounter. Even if the Court were to charitably view the incident as a series of escalating threats, it simply fails to rise to the level of two acts as required by the statute.

---

[5] Pursuant to RAP 41 cases designated "Not To Be Published" are not binding precedent. We cite to this case persuasively as no published opinion adequately addresses the unique question presented.

[6] Although various accusations were evidentially lobbed by each party at the other, only this voicemail was read into the record. Howell could not describe the content of the other alleged texts and voicemails, nor any dates or times they may have taken place. Moreover, though Smith admitted to making these phone calls, she similarly did not testify as to their content.

Nothing in our analysis should minimize the seriousness of the conduct described in this record. A ten-year-old child being placed in fear of imminent harm by a classmate wielding a firearm is unconscionable. Keenly aware of the trauma that A.R. experienced, we do not fault the Pendleton Circuit Court's instinct to provide her with protection. But our role is a limited one: we are bound to apply the statutes as the General Assembly has written them, not as we might wish them to be.

This case highlights a gap in the existing statutory framework—one that leaves children who experience a single, significant act involving a threat of imminent harm without access to protective relief. Given our nation's modern history of recurrent school-related shootings, we invite the General Assembly to examine whether circumstances involving threats to children at schools warrant broader protections than afforded by the IPO statute as currently written.

## CONCLUSION

For the reasons outlined above, the order of the Pendleton Circuit Court is VACATED.


ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEES.

Jan Shaw
Alexandria, Kentucky